**UNITED STATES of America**

v.

**Gary Lee SAMPSON.**

**Cr. No. 01–10384–MLW.**

United States District Court, D. Massachusetts.

Signed Nov. 8, 2014.

George W. Vien, Donnelly, Conroy & Gelhaar, LLP, Mark T. Quinlivan, Dustin Chao, Zachary R. Hafer, United States Attorney's Office, Boston, MA, Michael S.

Warbel, U.S. Department of Justice, Washington, DC, for United States of America.

Danalynn Recer, Attorney at Law, Houston, TX, Miriam Conrad, Elizabeth L. Prevett, J. Martin Richey, Federal Public Defender Office, Boston, MA, William E. McDaniels, Jennifer G. Wicht, Williams & Connolly LLP, Washington, DC, for Gary Lee Sampson.

*MEMORANDUM AND ORDER CONCERNING COMPETENCY EVALUATION, FEDERAL RULE OF CRIMINAL PROCEDURE 12.2, and MOTION TO DISQUALIFY PROSECUTORS*

WOLF, District Judge.

I. SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 505

II. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 506

III. THE LEGAL FRAMEWORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 512
 A. The Court's Equitable Authority in § 2255 Proceedings . . . . . . . . . . . . . . . . . . 512
 B. 18 U.S.C. § 3593(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 513
 C. Constitutional Issues Implicated by Sampson's New Sentencing . . . . . . . . . . . 513
 D. Federal Rule of Criminal Procedure 12.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 513

IV. ISSUES RELATING TO SAMPSON'S RULE 12.2 NOTICE . . . . . . . . . . . . . . . . . 514
 A. Sufficiency of Sampson's Rule 12.2 Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . 514
 B. Updated Notice and the Fire-walled Attorneys . . . . . . . . . . . . . . . . . . . . . . . . 515
 C. The Parties' Examinations of Sampson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 516
 1. Sampson's Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 516
 2. The Schedule Concerning the Parties' Examinations . . . . . . . . . . . . . . . . . 518

V. THE COMPETENCY EVALUATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 518

VI. SAMPSON'S MOTION TO DISQUALIFY . . . . . . . . . . . . . . . . . . . . . . . . . . . . 522

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 524

## I. SUMMARY

This court's decision to grant defendant Gary Sampson's petition pursuant to 28 U.S.C. § 2255 and vacate his death sentence because of juror misconduct was affirmed by the First Circuit. As a result, a new sentencing hearing must be conducted to determine Sampson's sentence and conclude this § 2255 proceedings before this court.

In preparation for that hearing, a series of related issues have emerged concerning Sampson's Fifth and Sixth Amendment rights, Federal Rule of Criminal Procedure 12.2, the report of the Bureau of Prisons ("BOP") Examiner concerning Sampson's competency to stand trial, and the propriety of the government's trial team having access to the information concerning Sampson's mental condition presented at his 2003 trial and previously in this § 2255 proceeding. Some of these issues can be resolved as matters of statutory construction. With regard to other issues, the court's decisions are guided by the following principles. The court's power under § 2255 is equitable in nature. Where, as here, there has been a violation of the defendant's constitutional rights, the court has broad power to craft an appropriate remedy. That remedy should, as much as possible, be tailored to the injury Sampson suffered and seek to restore him to the circumstances that existed before

the violation, while not unnecessarily infringing on competing interests.

For the reasons explained in detail in this Memorandum, the court has decided the disputed issues as follows. Sampson's October 20, 2014 Rule 12.2(b)(2) notice that he may introduce at the new sentencing hearing expert evidence concerning his mental condition is legally sufficient. At or after the November 12, 2014 hearing, the court will establish a schedule for Sampson's experts to examine and test his mental condition, and for Sampson to inform "fire-walled" attorneys for the government of the professions of those experts, and the tests they have performed and may conduct. The court will also establish a schedule for the government's experts' examination and testing of Sampson under the guidance of the fire-walled attorneys and pursuant to the Rule 12.2 protocol ordered by the court in 2003.

In addition, the court concludes that there is not now reasonable cause to believe that Sampson is not competent to stand trial. Therefore, a hearing to determine his competency is not now necessary. The court agrees with the parties that the BOP Examiner's report finding that Sampson is now competent to stand trial is subject to Rule 12.2. If, however, it is not as a matter of law, it is most appropriate to treat it as subject to the rule as an exercise of the court's § 2255 equitable authority. Therefore, the report will remain sealed and will not now be provided to the parties. If and when Sampson confirms his intention to introduce expert evidence of his mental condition, the court will decide whether to provide the Examiner's report to the parties and, if so, whether the government should receive it in redacted form. If the parties receive the Examiner's report, after considering the actual expert evidence Sampson intends to introduce, the court will decide if the government should be allowed to introduce evidence from the report or derived from it in rebuttal.

The court also concludes that it is not fair, feasible, or in the interest of justice to require that the government's trial team and experts on mental condition operate in ignorance of the evidence concerning Sampson's mental condition that he presented at his trial in 2003 and in this § 2255 proceeding. Rather, it is most appropriate that equally informed adversaries educate the jury, which will have to decide whether Sampson should be sentenced to death. Therefore, Sampson's motion to disqualify the government's trial counsel is being denied. However, if it would be unfair to permit particular evidence concerning Sampson's mental condition previously presented by him to be introduced to the jury by the government, the court will exercise its authority under 18 U.S.C. § 3593(c), which authorizes the court to exclude evidence if the risk of unfair prejudice outweighs its probative value, or its § 2255 equitable power, to exclude it.

Orders implementing these decisions will issue after the November 12, 2014 hearing.

## II. BACKGROUND

In 2001, defendant Gary Sampson was charged with two counts of carjacking resulting in death in violation of 18 U.S.C. § 2119(3). These charges permitted the government to seek Sampson's execution under the Federal Death Penalty Act, 18 U.S.C. § 3591 *et seq.* The Attorney General filed notice of his intention to seek the death penalty in 2002.

On May 5, 2003, Sampson filed a notice, pursuant to Federal Rule of Criminal Procedure 12.2(b)(2), that he might introduce at the penalty phase of this capital case expert evidence relating to a mental condition bearing on the issue of punishment.

*See* May 5, 2003 Rule 12.2 Notice (the "2003 Notice") (Docket No. 150); *United States v. Sampson,* 335 F.Supp.2d 166, 241 (D.Mass.2004).

The 2003 Notice generated issues under the then-new Rule 12.2 that were decided by the court, in some instances with the agreement of the parties, and memorialized in a series of orders. *See Sampson,* 335 F.Supp.2d at 241–48. To protect Sampson's Fifth Amendment interests, the court ordered that the government utilize for Rule 12.2 purposes "fire-walled" attorneys, who would not participate in the trial of the case or communicate with the prosecutors who would try the case. *Id.* at 243–45. Sampson was required to inform the fire-walled attorneys of the kinds of mental health professionals who had evaluated him and the tests they had performed. *Id.* at 242–43; June 17, 2003 Order at ¶ 1 (Docket No. 208). However, the government's request for "the nature of the proffered mental conditions" was denied because that information was "essentially the same as the 'results and reports' for which early disclosure is barred" by Rule 12.2(c)(2). *Id.* at 243.

In addition, in view of Sampson's Sixth Amendment interest in the effective assistance of counsel, the government was ordered to provide Sampson's attorneys with at least five-days' advance notice of the professions of the government experts who would examine Sampson with respect to his mental condition and of the tests they planned to perform. *Id.* at 245–46. This requirement was intended to provide Sampson's attorneys an opportunity either to advise him to participate in the proposed examination or to ask the court to prohibit it. The court also ordered that the examination of Sampson by the government's experts be tape-recorded unless the fire-walled attorneys successfully moved for reconsideration with regard to a particular test. *Id.* at 246–47. The court denied Sampson's request to have defense counsel present at the government's examination. *Id.* at 247–48.

In violation of the court's Order, a government expert administered a test without giving Sampson the required five-days' notice. This led to the replacement of the two government experts informed of the results of that test.

Jury selection began on September 18, 2003. On October 21, 2003, Sampson confirmed his intention to offer evidence concerning his mental condition. *See* Oct. 23, 2003 Order (Docket No. 469). Therefore, on October 23, 2003, the court authorized the fire-walled attorneys to provide the prosecutors the results and reports of the examinations of Sampson by the government's experts. *Id.,* ¶ 1. The government was ordered, pursuant to Rule 12.2(c)(2), to disclose that information to Sampson by 2:30 p.m. on October 31, 2003. *Id.,* ¶ 2; Oct. 31, 2003 Order at ¶ 3 (Docket No. 503). Sampson was directed, pursuant to Rule 12.2(c)(3), to disclose to the government later that day the results and reports of any examination of his mental condition about which Sampson intended to introduce expert evidence. *See* Oct. 23, 2003 Order, ¶ 3.

Sampson had pled guilty on September 9, 2003. The penalty phase of his trial began on November 5, 2003. Sampson presented at trial, in open court, expert testimony and related evidence concerning his mental condition. The government presented such evidence in rebuttal.

On December 23, 2003, the jury unanimously found that Sampson should be executed. In doing so, the jury also unanimously found that Sampson was not mentally ill when his crimes were committed. *See* 2003 Verdict Forms (Docket Nos. 654, 654–2); *see also United States v. Sampson,* 486 F.3d 13, 49–50 (1st Cir. 2007).

On January 26, 2004, the court denied Sampson's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. *See United States v. Sampson*, 332 F.Supp.2d 325 (D.Mass.2004). As required by Federal Rule of Criminal Procedure 33, the court evaluated the credibility of the competing evidence and found that "if the decision were to be made by the court rather than the jury, the court would have found that Sampson at least had a mental illness, bipolar disorder." *Id.* at 330. However, the court also found that the evidence on this issue did not predominate heavily in favor of Sampson being found bipolar and, therefore, it would not be appropriate to disregard the jury's finding on mental illness. *Id.* at 331. Ultimately, the court concluded that its difference of opinion on the one mitigating factor of mental illness did not justify a new trial. *Id.*

On May 7, 2007, the First Circuit affirmed. *See United States v. Sampson*, 486 F.3d 13, 50 (1st Cir.2007). With regard to mental illness, the First Circuit agreed with this court's finding that there was sufficient evidence to permit the jury to conclude that Sampson's mental condition was not a mitigating factor. *Id.*

In 2009, represented by new counsel, Sampson filed a petition, pursuant to 28 U.S.C. § 2255, to have his sentence vacated and for a new sentencing proceeding. The petition alleged, among other things, that Sampson's trial counsel were ineffective because they failed to adequately investigate and present evidence concerning Sampson's mental condition. *See United States v. Sampson*, 820 F.Supp.2d 202, 242–44 (D.Mass.2011). In support of that claim, Sampson submitted for the public record, records relating to a head injury that Sampson's trial counsel allegedly did not provide to his experts. *Id.* at 242. Sampson also submitted the results of post-trial testing by Dr. Ruben Gur, who opined that Sampson had, since early childhood, organic brain damage that impaired his ability to conform his actions to the requirements of the law. *Id.* at 243–44. In addition, Sampson filed for the public record other post-trial mental status evaluations and reports, as well as a few notes of his counsel and a few messages between them.

Sampson's § 2255 petition also included a claim that his trial counsel were ineffective because they failed to request an evaluation of whether he was competent to stand trial and, as a result, he was tried while he was unable to assist in his own defense and, therefore, incompetent. *Id.* at 245–47. This claim relied, in part, on an expert affidavit from Dr. George Woods, Jr., which was filed for the public record. *Id.* at 247.

As ordered by the court, the parties attempted to agree on a protective order concerning the information Sampson had submitted in support of his petition. The parties were not, however, able to agree on certain issues. Sampson proposed that the information he provided be used by the government only for the purpose of determining whether his sentence should be vacated and a new sentencing proceeding granted. *See* Gary Lee Sampson's Opp. to the Gov't's Mot. for Discovery at 7–8 (Docket No. 987). The government responded that:

> The government of course agrees that any materials produced by the Petitioner should not be used in any subsequent criminal proceedings (without further order of the Court) were the Petition to be allowed (assuming that the document or the information it contains was not already in the possession of the government, was not in the public domain, or is not a document that should have been disclosed to the government pursuant to the Local Rules of this Court, Rule 16 of

the Rules of Criminal Procedure, or any Order entered in the underlying criminal case). The government vigorously objects, however, to any protective order that could be construed to support a motion for disqualification of any government counsel or expert in any future proceedings based on the individual[']s review of the discovery in this case.

Gov't's Reply in Support of Mot. for Discovery at 7–8 (Docket No. 990). The court did not decide this dispute or issue a protective order because the focus of the litigation shifted from the claims of ineffective assistance of counsel to the claims of juror misconduct.

In 2011, the court found that persistent perjury during voir dire by one of the ultimately deliberating jurors resulted in a violation of Sampson's constitutional right to have his sentence decided by twelve impartial jurors. *See United States v. Sampson,* 820 F.Supp.2d 151, 159 (D.Mass. 2011). Therefore, Sampson's death sentence was vacated. *Id.* at 202.

The court also found that Sampson's claims that his trial counsel were ineffective because they did not request a competency evaluation, or properly investigate and present evidence of his mental condition could not be summarily dismissed. *See Sampson,* 820 F.Supp.2d at 242–47. However, as Sampson's sentence was vacated because of juror misconduct, it was not necessary to decide the merits of those claims.

This court subsequently authorized the government to seek an interlocutory appeal of its decision to vacate Sampson's death sentence. *See United States v. Sampson,* 2012 WL 1633296, at *15 (D.Mass.2012). On July 25, 2013, the First Circuit treated the appeal as a request for advisory mandamus, decided it on the merits, and affirmed the decision to vacate Sampson's sentence and order another proceeding to determine his sentence. *See*

*Sampson v. United States,* 724 F.3d 150 (1st Cir.2013). In doing so, the First Circuit rejected the government's contention that this court had ordered a new trial and, therefore, its decision was immediately appealable. *Id.* at 157. The First Circuit explained that:

> In *Andrews [v. United States,* 373 U.S. 334, 340, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963) ] the Supreme Court stated squarely that "[w]here, as here, what was appropriately asked and granted was the resentencing of the petitioners, it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced." We are bound by this precedent.

*Id.* (internal citations omitted). Accordingly, § 2255 proceedings are now continuing in this court to determine Sampson's sentence.

After mandate issued in November 2014, in a series of orders beginning on November 29, 2013 (Docket No. 1255), the court directed the parties to address whether the court should order that Sampson be examined to determine whether he is competent to participate in this § 2255 resentencing proceeding. The government repeatedly responded that it believed Sampson is competent. *See, e.g.,* Docket Nos. 1263 at 1, 1308 at 6, 1340 at 2–3. Sampson's counsel repeatedly stated there was not then reasonable cause to believe that Sampson was not competent and, therefore, no evaluation should be ordered. *See, e.g.,* Docket Nos. 1264 at 1, 1308 at 6, 1340 at 2–3. Nevertheless, for reasons explained at the June 4, 2014 hearing, the court found, pursuant to 18 U.S.C. § 4241(a), that "there [was] 'reasonable cause' to believe that [Sampson] 'may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and conse-

quences of the proceedings against him or to assist properly in his own defense.'" June 6, 2014 Order Concerning Competency Evaluation at 1 (Docket No. 1365). This conclusion was "based, in part, on the evidence submitted in connection with Sampson's First Amended Motion for a New Trial Pursuant to 28 U.S.C. § 2255, including the Declarations of Dr. Ruben C. Gur and the Declaration of Dr. George W. Woods, Jr." *See id.* (citations omitted). Therefore, the court ordered the BOP to conduct an examination of Sampson in accordance with 18 U.S.C. § 4247(b). *Id.,* ¶ 1.

This Order prompted litigation concerning many issues, including: whether the evaluation should be done by an Examiner independent of the BOP; whether the Examiner should have access to BOP records concerning Sampson; whether a psychologist should be allowed to participate in the examination; and when, if ever, the government should be provided the Examiner's report. The court addressed many of these issues in a June 30, 2014 Memorandum and Order (Docket No. 1392), which, among other things, directed the BOP Examiner and the parties not to communicate directly with each other without authorization from the court, and directed the Examiner to file his report with the court only, under seal. *See id.,* ¶¶ 2 & 6.

Despite filing many motions concerning the competency examination, Sampson did not move for advance notice of the tests the Examiner intended to employ to evaluate Sampson's competency. Therefore, the court did not decide whether such notice was appropriate.

In unauthorized direct communications with the Examiner, Sampson's counsel learned that the Examiner had administered an MMPI–II test. On August 30, 2014, Sampson moved to prevent the results of that test from being relied upon by the Examiner or being included in his report. Mot. to Return Sampson to Terre Haute; to Limit the Scope of the Competency Report and to Prevent the Use of Testing Results (the "Mot. to Limit Report") (Docket No. 1522). In support of this motion, Sampson argued that the administration of the MMPI–II violated his Sixth Amendment right to the advice of counsel and that the disclosure of any statements made by Sampson during that test should be excluded from the Examiner's report to protect Sampson's Fifth Amendment rights. *See* Mem. in Support of Mot. to Limit Report (Docket No. 1523).

In a response to a September 9, 2014 Order (Docket No. 1528), the Examiner stated that he could provide an opinion on Sampson's competency without relying on the results of the MMPI–II. After a hearing on September 23, 2014, the court ordered the Examiner to prepare a version of the competency report that excluded, and did not rely upon, the results of the MMPI–II.

The court has received, under seal, a September 25, 2014 report of the Examiner. The report states, in its most pertinent part, that:

In the opinion of the evaluating psychiatrist, Mr. Sampson does not currently suffer from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or assist properly in his defense. Therefore, he is viewed as competent to stand trial because his mental condition has so improved that the proceedings may go forward. It is possible his competency status may be compromised if he becomes noncompliant with [his treatment].

\* \* \*

Mr. Sampson may be returned to court for further legal proceedings. He will need medical management of his chronic

medical ailments and psychiatric management of his [treatment].

Forensic Evaluation–Second Version at 27 (the "Examiner's report").[1]

On October 7, 2014, the court ordered the parties to confer and, by October 23, 2014, report their respective views on the following issues concerning the competency evaluation:

1. Whether Rule 12.2(c)(4)(B) applies to the Report and the information it contains.

2. Whether "firewalled" prosecutors are required by the Fifth Amendment or Rule 12.2(c)(4)(B), if that Rule applies, or should be utilized by the government even if Rule 12.2(c)(4)(B) does not apply. *See United States v. Sampson*, 335 F.Supp.2d 166, 241–48 (D.Mass.2004).

3. If Sampson gives notice pursuant to Rule 12.2(b) that he intends to introduce expert evidence concerning his mental condition, whether the Report, or any information contained in the Report, should be provided to the expert(s) retained by the government, either before Sampson has introduced such evidence or after he has done so. *See* Fed. R.Crim.P. 12.2(c)(2), (3), (4)(B).

4. Whether the Report should be provided to the parties under seal.

5. Whether a Protective Order concerning the Report should issue and, if so, the provisions of any such Order.

6. The implications, if any, of *Kansas v. Cheever*, [— U.S. ——] 134 S.Ct. 596 [187 L.Ed.2d 519] (2013), the cases it cites, and related cases for the foregoing issues.

7. Whether the court should conduct a competency hearing, pursuant to 18 U.S.C. § 4247(d). *See [United States v.*

*Bruck,* 152 F.3d 40, 45–46 (1st Cir. 1998) ].

8. Whether Sampson should appear at the November 10, 2014 hearing to participate in: (a) a competency hearing pursuant to 18 U.S.C. § 4247(d); (b) a colloquy to confirm that, pursuant to 28 U.S.C. § 455(e), his written waiver of any objection to this court's participation in this case based on its prior association with Assistant United States Attorney Zachary Hafer; and (c) a colloquy to determine whether he wishes to waive his right, under Federal Rule of Criminal Procedure 43(a), to be present at any hearing at which testimony will be taken prior to trial.

Oct. 7, 2014 Order Concerning Competency at 5–7 (footnote omitted) (the "Oct. 7, 2014 Order") (Docket No. 1611). As discussed in § V, *infra,* the parties disagree on many of these issues.

On March 19, 2014, despite Sampson's objection that more time was needed to prepare, the court ordered that jury selection for the new sentencing proceeding would begin on February 17, 2015. *See* Mar. 19, 2014 Order, ¶ 11, (Docket No. 1319). The parties had agreed that, if Sampson intended to introduce expert evidence concerning his mental condition, he would file any updated Rule 12.2(b) notice at least 120 days before trial. Therefore, the court ordered that he do so by October 20, 2014, again denying Sampson's request for more time. *Id.,* ¶ 10(a). The court also directed Sampson to propose, by October 20, 2014, a protocol for any government examination of his mental condition. *Id.* On June 30, 2014 and October 10, 2014, the court denied Sampson's requests for an extension of time to file any Rule 12.2

---

**1.** For the reasons explained in § V, *infra,* the Examiner's report is not being provided to the parties or made public. However, the above-quoted part of it is necessary to understand the court's decision that a hearing to determine Sampson's competency to stand trial is not now required.

notice. *See* June 30, 2014 Mem. and Order at 11–12 (Docket No. 1391); Oct. 10, 2014 Order Concerning Extension of Time for 12.2 Notice, ¶ 2 (Docket No. 1617).

The October 10, 2014 Order, ¶ 3, also stated that:

> If Sampson files a Rule 12.2(b)(2) notice, by October 23, 2014, the parties shall confer and report, jointly if possible, but separately if necessary, their view(s) concerning a protocol for dealing with issues relating to that notice, including but not limited to: whether it is prudent or legally necessary for "firewalled" attorneys for the government to be utilized with regard to matters relating to the notice; the deadline for the disclosure by Sampson of reports pursuant to Federal Rule of Criminal Procedure 12.2(c)(3); and procedures and deadlines for any requested examination by the government. *See Sampson,* 335 F.Supp.2d at 244–48.

*Id.*

On October 20, 2014, Sampson filed a Rule 12.2 notice, stating that he " 'may introduce, at the penalty phase of this capital case, expert evidence relating to a mental disease or defect or any other mental condition bearing on the issue of punishment.' " Preliminary Notice Pursuant to Rule 12.2(b)(2) at 10 ("Preliminary 12.2 Notice") (Docket No. 1619) (quoting *Sampson,* 335 F.Supp.2d at 241).

## III. THE LEGAL FRAMEWORK

### A. *The Court's Equitable Authority in § 2255 Proceedings*

As explained earlier, the court has found in this § 2255 proceeding that, as a result of juror misconduct, Sampson's Sixth Amendment right to an impartial jury was violated. *See Sampson,* 820 F.Supp.2d at 201. Therefore, he is entitled to a new proceeding to determine his sentence. *Id.* As also explained earlier, the First Circuit has affirmed these decisions and agreed that a new penalty phase proceeding should be conducted. *See Sampson,* 724 F.3d at 170. Therefore, the § 2255 proceedings are now continuing in this court.

■ The First Circuit has emphasized: the broad leeway traditionally afforded district courts in the exercise of their § 2255 authority. "The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia,* 956 F.2d 41, 45 (4th Cir.1992) (citing *Andrews v. United States,* 373 U.S. 334, 339, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963)). This is so because a district court's power under § 2255 "is derived from the equitable nature of habeas corpus relief." *United States v. Handa,* 122 F.3d 690, 691 (9th Cir.1997) (internal citations omitted); *see also Schlup v. Delo,* 513 U.S. 298, 319, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("[H]abeas corpus is, at its core, an equitable remedy.").

*United States v. Torres–Otero,* 232 F.3d 24, 30 (1st Cir.2000).

■ While the court's discretion to devise an equitable remedy is considerable, "the remedy 'should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.' " *United States v. Gordon,* 156 F.3d 376, 381 (2d Cir.1998) (quoting *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). A remedy tailored to the constitutional violation is "one that as much as possible restores [Sampson] to the circumstances that would have existed had there been no constitutional error." *United States v. Carmichael,* 216 F.3d 224, 227 (2d Cir.2000); *see also Bittaker v. Woodford,* 331 F.3d 715, 722 (9th Cir.2003) ("If a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position

he would have occupied, had the first trial been constitutionally error-free."); *Gordon*, 156 F.3d at 381; *Ferrara v. United States*, 372 F.Supp.2d 108, 112–13 (D.Mass. 2005).

### B. *18 U.S.C. § 3593(c)*

In this capital resentencing proceeding, the court's general equitable authority is complemented by its authority pursuant to 18 U.S.C. § 3593(c) to exclude otherwise admissible evidence "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." The government now possesses some information that was not available to it at the time of its case-in-chief at trial in 2003, and other information provided in support of the subsequent § 2255 petition. If Sampson asserts that it would be unfair to permit the government to present particular forms of such evidence, § 3593(c) gives the court authority, in addition to its inherent equitable power, to exclude it if appropriate to promote the fairness of the resentencing.

### C. *Constitutional Issues Implicated by Sampson's New Sentencing*

█ Issues relating to Sampson's Fifth and Sixth Amendment rights are among those raised as a result of the required new proceeding to determine his sentence. With regard to the Fifth Amendment, in *Estelle v. Smith*, 451 U.S. 454, 468, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court held that when a criminal defendant "neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence," his compelled statements to a psychiatrist cannot be used against him. In *Buchanan v. Kentucky*, 483 U.S. 402, 423–24, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987), the Supreme Court held that where a defense expert who examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution

may present psychiatric evidence for the purpose of "limited rebuttal." As the Court later explained, "[a]ny other rule would undermine the adversarial process, allowing a defendant to provide the jury with a one-sided and potentially inaccurate view of his mental state at the time of the alleged crime." *Kansas v. Cheever*, —— U.S. ——, 134 S.Ct. 596, 601, 187 L.Ed.2d 519 (2013). However, a defendant's introduction of expert evidence concerning his mental condition does not justify the admission of all evidence the government may want to introduce. *Id.* at 603. Rather, the court must assure that the government's evidence does not "exceed[ ] the scope of rebuttal testimony permitted by the Fifth Amendment or by the [ ] evidentiary rules." *Id.*

In *Estelle*, 451 U.S. at 469–71, 101 S.Ct. 1866, the Court also concluded that the defendant's Sixth Amendment right to the assistance of counsel was violated when he did not have the opportunity to discuss with his counsel the government's examination or its scope.

### D. *Federal Rule of Criminal Procedure 12.2*

Federal Rule of Criminal Procedure 12.2 represents an effort to strike an appropriate balance between protecting a capital defendant's Fifth Amendment rights and assuring that the government is able to prepare to rebut, fairly and efficiently, any expert evidence the defendant introduces concerning his mental condition. *See* Fed. R.Crim.P. 12.2 advisory committee's note.

█ Rule 12.2(b)(2) requires a defendant in a capital case to give notice, at a time determined by the court, of his intent to introduce expert evidence on the issue of punishment. The notice does not, however, commit a defendant to introducing such evidence. *See Sampson*, 335 F.Supp.2d at 241–42. Rather, Rule 12.2(e)

implicitly permits the notice to be withdrawn and provides that evidence of such a withdrawal may not be introduced by the government. *Id.*

A Rule 12.2(b)(2) notice gives the government the right to request an examination of the defendant, and provides the court the authority to establish procedures for any examination by the government that the court allows. *See* Fed.R.Crim.P. 12(c)(1)(B); *Sampson,* 335 F.Supp.2d at 241–43, 245–46. The results of an examination conducted under Rule 12.2(c)(1), after a Rule 12.2(b)(2) notice, must be sealed and not disclosed to any attorney for the government or the defendant unless the defendant is found guilty of a capital crime and confirms an intent to introduce expert evidence on his mental condition. *See* Rule 12.2(c)(2). The defendant is required to disclose the results and reports only of examinations "about which the defendant intends to introduce expert evidence." *See* Fed.R.Crim.P. 12.2(c)(3). "This procedure, while not constitutionally required, is designed to avoid litigation over whether the government has improperly made derivative use of the evidence. *See* 2002 Advisory Committee Notes (citing [*United States v. Beckford,* 962 F.Supp. 748, 756–64 (E.D.Va.1997) ]; *United States v. Hall,* 152 F.3d 381, 398 (5th Cir.1998))." *Sampson,* 335 F.Supp.2d at 243. In order to protect the defendant's Fifth Amendment rights, Rule 12.2(c)(4) prohibits the admission into evidence of any statement made by a defendant in a Rule 12.2 examination, expert testimony based on such a statement, or any fruits of such a statement, unless the defendant first introduces evidence of his mental condition.

## IV. ISSUES RELATING TO SAMPSON'S RULE 12.2 NOTICE

Rule 12.2 does not resolve all of the Fifth and Sixth Amendment issues relating to examinations of mental condition involved in this and other capital cases. *See*

*Sampson,* 335 F.Supp.2d at 241–48; *United States v. Lujan,* 530 F.Supp.2d 1224, 1238–42 (D.N.M.2008); *United States v. Wilson,* 493 F.Supp.2d 348, 352–59 (E.D.N.Y.2006); *United States v. Johnson,* 362 F.Supp.2d 1043, 1077–92 (N.D.Iowa 2005). Indeed, the Sixth Amendment issues are not addressed by Rule 12.2 at all.

 The parties now disagree on many of the Fifth and Sixth Amendment questions not resolved by Rule 12.2. Some of these issues were decided in 2003. *See Sampson,* 335 F.Supp.2d at 241–48. The court finds that it is appropriate, if not required, to apply law of the case principles to Rule 12.2—related issues previously decided. *See United States v. Wallace,* 573 F.3d 82, 89 (1st Cir.2009); *Negron–Almeda v. Santiago,* 579 F.3d 45, 51–52 (1st Cir.2009); *United States v. Bell,* 988 F.2d 247, 251 (1st Cir.1993). These principles provide that, absent exceptional circumstances, including the prospect of serious injustice, prior rulings should not be reconsidered. *See Wallace,* 573 F.3d at 89; *Bell,* 988 F.2d at 251. The relevant 2003 Rule 12.2 rulings have not been shown to be unjust. Indeed, they have been fully or substantially adopted by judges in other cases. *See, e.g., Lujan,* 530 F.Supp.2d at 1238–42; *Wilson,* 493 F.Supp.2d at 352–59; *Johnson,* 362 F.Supp.2d at 1077–1092. Therefore, except where the present posture of this case requires revisions, the court will order the Rule 12.2 procedures that were employed in 2003.

### A. *Sufficiency of Sampson's Rule 12.2 Notice*

 The government asserts that Sampson's October 20, 2014 "preliminary" Rule 12.2 notice, *see* Mot. to Compel Proper 12.2 Notice (Docket No. 1627), is deficient because it, in effect, states only that Sampson might introduce expert evidence

of his mental condition, *see* Preliminary 12.2 Notice at 10 (Docket No. 1619). This contention is not correct. The 2014 notice is, in pertinent part, the verbatim duplicate of the 2003 Notice. Both state that Sampson "may introduce" expert evidence concerning his mental condition bearing on the issue of punishment. This is all that is required by Rule 12.2(b)(2). *See Sampson,* 335 F.Supp.2d at 241–43; Oct. 10, 2014 Order Concerning Extension of Time for 12.2 Notice at 3 (the "Oct. 10, 2014 Order") (Docket No. 1617).

As a result of the filing of the October 20, 2014 notice, the government is now entitled to the information its experts will need to conduct meaningful testing of Sampson. In 2003:

> Following a hearing and further discussion between the parties, the court adopted the parties' agreement that defense counsel would supplement the defendant's Rule 12.2 Notice to include "the kinds of mental health professionals who have evaluated Mr. Sampson (e.g., forensic psychiatrist, neuropsychologist, clinical psychologist) as well as the specific nature of any testing that these experts have performed (e.g., MMPI–2, WAIS–2, etc.) in the course of their evaluations of Mr. Sampson."

*Sampson,* 335 F.Supp.2d at 242. "The parties also agreed that: (1) the government must preserve all notes taken during its experts' examinations; and (2) use and disclosure of the reports will be governed by Rule 12.2(c)(2)-(4) and (e)." *Id.* at 242 n. 44. However, the court denied the government's request for the "nature of the proffered mental condition(s)." *Id.* at 243 (internal quotation marks omitted). As the court explained, "[u]nder [Rule 12.2], requiring the defendant to provide such information is [not] permissible because 'the nature of the proffered mental condition(s)' is essentially the same as the 'results and reports' for which early disclo-

sure is barred. *See* Fed.R.Crim.P. 12.2(c)(2)." *Id.* The court will issue a comparable order in this proceeding. *See* Oct. 23, 2003 Order (Docket No. 469). However, the court will modify that Order to require that Sampson disclose the kinds of tests his experts may perform, as well as those that have been performed. *See, e.g., Wilson,* 493 F.Supp.2d at 353; *Johnson,* 362 F.Supp.2d at 1080.

### B. *Updated Notice and the Fire-walled Attorneys*

■ There are, however, open questions as to whether the prosecutors or fire-walled attorneys should receive the amplified notice and, in any event, when Sampson should be required to provide it. The government argues that its trial team rather than fire-walled attorneys should receive the additional information. *See* Mot. to Compel Proper Rule 12.2 Notice at 5–6 (Docket No. 1627) (citing *Johnson,* 362 F.Supp.2d at 1079–80). In 2003, the parties agreed on this issue. *See* Def.'s Mem. Regarding the Conditions Under Which the Gov't—Pursuant to F.R.Crim.P. 12.2— May Conduct a Mental Health Evaluation of Mr. Sampson, at 3 (Docket No. 195, under seal). Pursuant to that agreement, the court ordered that "the professions of the experts who have examined [Sampson] with respect to the issue of his mental condition and a list of the tests each has performed" be provided to the fire-walled attorneys, rather than to the government trial team. June 17, 2003 Order, ¶ 1 (Docket No. 208); *see also Sampson,* 335 F.Supp.2d at 243–45. The June 17, 2003 Order, ¶ 1, also directed that Sampson "promptly supplement this submission as additional experts examine the defendant on the issue of his mental condition or additional tests are performed." Disclosure of this information to fire-walled attorneys was intended to minimize the risk that Sampson's Sixth Amendment right to

effective assistance of counsel could be compromised by the premature disclosure of his strategy to the government trial team. *Sampson*, 335 F.Supp.2d at 243, 245. The court continues to find that it is permissible, and not manifestly unjust, to require that the additional information be provided only to the fire-walled attorneys.

Except with regard to the foregoing issue, the government has again agreed to the use of fire-walled attorneys for the purpose of matters resulting from Sampson's Preliminary 12.2 Notice. The government, however, proposed using fire-walled Assistant United States Attorneys ("AUSAs") in the District of Massachusetts, rather than from another District as it agreed to do in 2003. Sampson argued that the court should order that the government employ fire-walled attorneys from another District. On October 30, 2014, the court issued an Order noting that in 2003, " 'the government wisely chose to use fire-walled AUSAs from a different district to minimize the possibility of any breach of the fire-wall.' " Oct. 30, 2014 Order Concerning "Fire-Walled" Attorneys at 2 (Docket No. 1628) (quoting *Sampson*, 335 F.Supp.2d at 245, n. 46). However, "considerations of comity prompt[ed] this court not to exercise its authority to decide how the government should staff this case." *Id.* Therefore, it concluded that "if the government wishes to assume the foreseeable, enhanced risk of at least litigation concerning the integrity of the firewall, it may select to serve as fire-walled attorneys employees of the United States Attorney for the District of Massachusetts." *Id.* On November 6, 2014, the government designated Assistant United States Attorneys Mark Grady and Cory Flashner, who work in the Worcester Office of the United States Attorney for the District of Massachusetts, to serve as its fire-walled attorneys. Gov't's Resp. to Court's Order Re: "Fire-Walled" AUSAs (Docket No. 1658).

Therefore, these fire-walled attorneys will receive the additional information concerning Sampson's experts, and the tests they have performed, or may perform, on a schedule to be established after the November 12, 2014 hearing. There are additional issues relating to that schedule that the court will also decide after hearing from the parties.

### C. The Parties' Examinations of Sampson

#### 1. Sampson's Examinations

Sampson's counsel has known since March 19, 2014, that the new penalty phase proceeding was, over Sampson's objection, scheduled to begin on February 17, 2014, and that any Rule 12.2(b)(2) notice would have to be filed by October 20, 2014. *See* Mar. 19, 2014 Order (Docket No. 1319). Nevertheless, at least as of October 20, 2014, his counsel have not had Sampson's mental condition tested or evaluated by any expert. *See* Preliminary 12.2 Notice at 12 (Docket No. 1619). The government urges the court to order Sampson's counsel to have him examined and tested promptly.

Sampson's counsel seek to justify their decision not to have him examined and tested in several ways. They argue, in part, that they have not had time to have experts test and evaluate Sampson or make their strategic decisions on how to use the experts. *See* Preliminary 12.2 Notice at 8 (Docket No. 1619); Mot. for Extension of Time for 12.2 Notice at 4 (Docket No. 1616). They particularly argue that they cannot now decide the important strategic question of whether to introduce evidence of Sampson's mental condition in the new penalty phase proceeding. Preliminary 12.2 Notice at 9. Among other things, Sampson's counsel assert that before having Sampson examined and tested they need to know the admissibility in the

resentencing proceeding of possible aggravating factors, Sampson's prior bad acts and prison disciplinary offenses, and other government evidence. *Id.* at 12. In addition, they argue that, " '[o]nly after completion of the heightened reliability, 18 U.S.C. § 3593(c) and *Daubert* court conducted review process as to all of the evidence [proffered] by the government in support of the future dangerousness aggravator can counsel intelligently conduct the expert consultation process required by [Rule] 12.2.' " *Id.* at 13–14 (quoting Declaration of Mark H. Donatelli at 2–3 (Docket No. 1619–3)). They also contend that "numerous critical legal questions regarding the scope and use of various previous evaluations and medical records" must be resolved before a decision can be made concerning "whether to present expert evidence regarding Mr. Sampson's mental health for any reason or as to the type and nature of any mental health evidence that might be presented." *Id.* at 9.

Sampson's arguments are in meaningful measure based on the flawed premise that he must decide what evidence of his mental condition to try to introduce, and learn whether it will be admissible, before he is examined by his experts and the government's. As this court explained in 2003, and reiterated on October 10, 2014, having Sampson's mental condition evaluated does not commit Sampson to offering evidence of his mental condition in the new proceeding to determine his sentence or permit the government's trial team to gain any advantage if he decides not to do so. *See Sampson,* 335 F.Supp.2d at 241–42; Oct. 10, 2014 Order at 3 (Docket No. 1617).

Such a notice can be withdrawn. *Cf.* Rule 12.2(e). The government's trial team will not receive any information concerning any of its experts' evaluations or Sampson's unless and until Sampson confirms his intention to introduce evidence on his mental condition. *See* Fed.R.Crim.P. 12.2(c)(2),(3). As permitted by the court, Sampson did not make this decision in 2003 until the jury was being selected. *See* Oct. 23, 2003 Order at 1 (Docket No. 469). In any event, the government will not be allowed to introduce any statement Sampson made in a Rule 12.2 examination, or any information derived from it, except to rebut expert evidence Sampson has already introduced. *See* Fed.R.Crim.P. 12.2(c)(4).

In a series of *ex parte* sealed budget submissions beginning in January 2014, Sampson requested funding for six experts concerning his mental condition and related testing.[2] *See* Docket Nos. 1297–1 at 12–16; 1373 at 13; 1563–1 at 5; *see also* Docket No. 1331–1 at 7. Except for a September 17, 2014 budget submission on which the court has not yet acted, all of Sampson's requests have been approved. Nevertheless, to the court's knowledge, few of the authorized funds have been expended.

In view of the foregoing, the court concludes that defense experts are now available to examine and test Sampson. Any such examination and testing could, if appropriate, be supplemented in the future. Similarly, funding for additional experts could be requested if justified by the evolution of events. Therefore, after hearing

---

**2.** Sampson's budget requests have been filed *ex parte* and under seal to protect the confidentiality of the defense strategy. *See* 7A *Guide to Judicial Policy* § 640.20(c); Docket Nos. 1304, 1347, 1393. However, as the court is now relying in part on the information in the *ex parte,* sealed submissions, the court finds it most appropriate to describe

that information generally in this public document, without revealing the names or specialties of the experts referenced. This approach strikes a proper balance between the interests of the parties and the public in understanding the court's reasoning, and Sampson's interest in the confidentiality of his trial strategy.

from the parties on November 12, 2014, the court intends to establish a schedule to have Sampson examined and tested by his experts.

### 2. The Schedule Concerning the Parties' Examinations

There remains a question of when Sampson should be ordered to disclose to the fire-walled attorneys the professions of his experts, and the tests they have performed or will perform. Rule 12.2 does not address these issues. Rather, it provides that after notice is given under Rule 12.2, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Fed.R.Crim.P. 12.2(c)(1)(B).

Sampson states in his Oct. 23, 2014 Response to Orders 1611 and 1617, at 19–20 (the "Oct. 23, 2014 Def. Resp.") (Docket No. 1623), that:

> The government's evaluation cannot take place until the defense has conducted an evaluation and provided the more specific 12.2 notice as outlined in the Preliminary 12.2 Notice. If the government is permitted to conduct an evaluation, it should be limited to types of evaluation and data provided to defense experts and follow the protocols established in the original proceeding as set forth at United States v. Sampson, 335 F.Supp.2d at 244–48, that the defense received 5 days advance notice of the tests to be utilized in the government's examination, and that the government examination be recorded. We further request that a representative of the defense be present at the government's examination.

The court agrees that it is preferable that the defendant's evaluation precede the government's, in part to permit the government's evaluation to be tailored to the parameters of the defendant's. However, Rule 12.2 does not require that the defendant's evaluation be conducted first.

Rather, the court has the discretion to decide what procedure is most appropriate in the circumstances. See Fed.R.Crim.P. 12.2(c)(2). Therefore, if Sampson will not comply with the schedule for defense evaluations the court orders, the court may, upon request, permit the government to examine him first.

In any event, in 2003, with the agreement of defense counsel and the fire-walled attorneys, the court ordered that Sampson be given at least five-days' advance notice of the professions of the government experts who would examine him and the tests they planned to perform. See Sampson, 335 F.Supp.2d at 245–46. The court also ordered that the government's examinations be tape-recorded. Id. at 246–47. Law of the case principles, as well as the original reasons for requiring notice, id. at 245–47, cause the court to conclude that such notice and tape-recording should again be ordered.

In 2003, the court declined to order that Sampson's counsel be allowed to attend the government's experts' examination of him, finding, in part, that the notice requirement and tape-recording of the examination was sufficient to protect his interests. Id. at 246–48. Sampson has not shown that serious injustice will result if the same procedures are employed for his resentencing. See Wallace, 573 F.3d at 89.

## V. THE COMPETENCY EVALUATION

In view of the arguments and evidence presented in support of Sampson's § 2255 ineffective assistance of counsel claim, shortly after the remand in November 2013, the court raised the issue of whether Sampson should be evaluated for competency to stand trial before his resentencing. See Nov. 29, 2013 Mem. and Order at 3–4, ¶ 1 (Docket No. 1255). The court was also concerned about the related "implica-

tions, if any, of [Rule] 12.2(c)(2), and whether a procedure involving 'fire-walled' Assistant United States Attorneys should be employed, if an evaluation and hearing [were] ordered to determine whether Sampson is competent to stand trial." *See* Jan. 22, 2014 Order, ¶ 4(g) (Docket No. 1275).

These issues were the subject of several orders, submissions by the parties, and hearings. Both Sampson and the government repeatedly asserted that Sampson was competent to stand trial, and that there was not the "reasonable cause" required by 18 U.S.C. § 4241(a) for the court to order an evaluation. *See, e.g.,* Docket Nos. 1263 at 1, 1264 at 1, 1308 at 6, 1340 at 2–3. Nevertheless, in the June 6, 2014 Order (Docket No. 1365), the court, pursuant to 18 U.S.C. § 4241(b), ordered the BOP to evaluate Sampson for competency to stand trial, based in meaningful measure on the arguments and evidence concerning Sampson's competency to stand trial in 2003 that were presented earlier in these § 2255 proceedings.

As explained previously, although Sampson filed many motions relating to the competency examination, he neither moved for, nor received, an order requiring advance notice of any tests the Examiner intended to administer. In unauthorized direct communications with the Examiner, Sampson's counsel learned that Sampson had been administered an MMPI–II test. Sampson filed a motion to limit the scope of the competency report, asserting that the test violated his Sixth Amendment right to counsel and that disclosure of the results of the test to the government would violate his Fifth Amendment rights as well. *See* Mot. to Limit Report (Docket No. 1522). Sampson, therefore, requested limitations on the use and disclosure of the test results, and for limitations on any future testing by the Examiner. *See*

Mem. in Support of Mot. to Limit Report at 35 (Docket No. 1523).

Sampson's motion brought into sharper focus the court's questions concerning the implications of Rule 12.2 for the competency evaluation and related Fifth and Sixth Amendment considerations. Since November 2013, the views of the parties concerning Rule 12.2's application to a competency evaluation have evolved and changed, as have the court's tentative views.

In responding to the January 22, 2014 Order, the parties agreed that Rule 12.2(c)(2), which restricts disclosure of the results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2), was not applicable to competency evaluations. *See* Mar. 7, 2014 Joint Resp. to Court's Jan. 22, 2014 Order at 6–7 (Docket No. 1308). Therefore, they also agreed that fire-walled attorneys for the government would not be necessary if the court decided that Sampson's competency to stand trial should be evaluated. *Id.*

Most recently, however, Sampson and the government have each taken the position that Rule 12.2 generally applies to the competency evaluation that has been conducted in this case. *See* Oct. 23, 2014 Gov't Resp. to Court Orders Concerning Competency at 1–2 (the "Oct. 23, 2014 Gov't Resp.") (Docket No. 1622); Sept. 29, 2014 Gov't Resp. to Court Order at 2, n. 1 (Docket No. 1586); Oct. 23, 2014 Def. Resp. at 2, 9 (Docket No. 1623). The parties disagree, among other things, on: whether the government should be required to use fire-walled attorneys for matters regarding the competency evaluation and, if so, whether the government should be required have a second set of fire-walled "taint attorneys" separate from those employed for Rule 12.2 purposes; whether the Rule 12.2 experts should be provided the Examiner's report; and

whether the report should be sealed. More specifically, Sampson advocates the use of a second set of "taint attorneys" and not allowing the Rule 12.2 experts to have the Examiner's report. He also argues that Rule 12.2(c)(4)(A) governs the admissibility of the report and, therefore, no statements Sampson made to the Examiner, and no evidence derived from those statements, should be admitted unless he introduces expert evidence that he is not competent to stand trial. The government disagrees with each of these assertions. Among other things, it contends that its trial team should now receive the Examiner's report, subject to the restrictions of Rule 12.2(c)(4)(B), which permits use and derivative use of Sampson's statements if he introduces expert evidence concerning his mental condition generally. *See* Oct. 23, 2014 Gov't Resp. at 13 (Docket No. 1622).

In addition, the parties agree that, in certain circumstances, the court has the discretion not to conduct a hearing, pursuant to 18 U.S.C. § 4241(a) and (c) and § 4247(d), to determine Sampson's competency to stand trial. *See* Oct. 23, 2014 Gov. Resp. at 5 (citing *United States v. Bruck*, 152 F.3d 40, 46 (1st Cir.1998)); Oct. 23, 2014 Def. Resp. at 17–18 (quoting *Bruck, supra* ). As the parties recognize, the First Circuit has held that " 'if a qualified mental health professional has determined that a defendant is competent, a court is not required to hold a further evidentiary hearing absent extenuating circumstances.' " *United States v. Lebron,*

76 F.3d 29, 32 (1st Cir.1996). Similarly, the First Circuit has stated that a district court has the discretion not to conduct a competency hearing "as long as there [is] a sufficient evidentiary basis to ground the court's competency determination." *Bruck,* 152 F.3d at 46 (citing *Lebron,* 76 F.3d at 32). Sampson asserts that there is no need for a competency hearing. *See* Oct. 23, 2014 Def. Resp. at 17–18 (Docket No. 1623). The government contends that it cannot take a position concerning whether the court should hold a hearing until it reviews the Examiner's report. *See* Oct. 23, 2014 Gov't Resp. at 5 (Docket No. 1622).

 The Examiner's report implicates the Fifth and Sixth Amendment interests discussed earlier concerning the reports of the parties' Rule 12.2 experts. Among those interests are Sampson's right not to have his statements to the Examiner, or any evidence derived from them, introduced by the government, except in rebuttal of expert testimony he introduces. There is also the related interest of minimizing the risk of time-consuming taint litigation. *See, e.g., Cheever,* 134 S.Ct. at 603; *Buchanan,* 483 U.S. at 423–24, 107 S.Ct. 2906; Rule 12.2(c)(4)(A), (B); Fed. R.Crim.P. 12.2 advisory committee's note ("Most courts that have addressed the issue have recognized that if the government obtains early access to the accused's statements, it will be required to show that it has not made derivative use of that evidence. Doing so can consume time and resources.").[3]

---

**3.** On August 30, 2014, Sampson complained that the Examiner's administration of the MMPI–II violated his Sixth Amendment rights and use, or derivative use, of the results of that test by the government would violate his Fifth Amendment rights. Mem. in Support of Mot. to Limit Report (Docket No. 1523). The Examiner subsequently stated that the results of that test were not necessary for him to reach an opinion concerning Sampson's competency to stand trial. Decl. of Bryon Lee

Herbel, M.D. ¶ 12 (Docket No. 1571, under seal). Therefore, after a hearing on September 23, 2014, the court ordered the Examiner to prepare two versions of his report, one that included and relied upon the results of the MMPI–II and one which did not. *See* Sept. 24, 2014 Order Concerning Competency Examination ¶ 4, n. 1 (Docket No. 1579).

After the government objected to the court reading a version of the Examiner's report

As explained previously, Rule 12.2 is designed to address these Fifth Amendment concerns. Rule 12.2(c)(2) requires that a report covered by it not be disclosed to an attorney for the defendant or the government until the defendant confirms his intent to offer expert evidence on mental condition during sentencing proceedings. Arguably, the Examiner's report does not fit the literal language of Rule 12.2(c), because this rule applies to "[t]he results and reports of any examination conducted solely under Rule 12.2(c)(1) *after* notice under Rule 12.2(b)(2)." Fed. R.Crim.P. 12.2(c)(2) (emphasis added). Rule 12.2(c)(1)(A) states that "[t]he court may order the defendant to submit to a competency examination under 18 U.S.C. § 4241." On June 6, 2014, the court ordered that Sampson be examined. *See* June 6, 2014 Order (Docket No. 1365) This was after the 2003 Notice in the underlying case, but before Sampson's October 20, 2014 notice in these § 2255 proceedings.

Nevertheless, as explained earlier, the parties agree that Rule 12.2 applies to the Examiner's report. *See* Docket Nos. 1586 at 2, n. 1, 1622 at 1–2, 1623 at 2. The court too finds that Rule 12.2 generally applies to the Examiner's report and that, if the Rule does not apply, the court should exercise its § 2255 equitable authority to treat the report as if Rule 12.2 does apply. In view of the substantial Fifth and Sixth Amendment interests implicated by the report, it would be odd and unfair to allow the treatment of it to be determined by the fact that the Order requiring the competency evaluation preceded Sampson's Rule 12.2(b)(2) notice.

The court's conclusion might be different if it found that a hearing, pursuant to § 4241(b) and § 4247(d), to determine Sampson's competency to stand trial was now necessary. However, as explained earlier, Sampson and the government have repeatedly represented that Sampson is competent to stand trial. The Examiner's report supports their shared position. Therefore, a qualified professional has determined that Sampson is competent to stand trial. His report, and the information submitted previously by Sampson's counsel, provide the court with an undisputed, ample evidentiary basis to make a competency determination. The court now concludes that there is not "reasonable cause to believe" that Sampson is not competent to stand trial at this time. 18 U.S.C. § 4241(a). Therefore, a hearing to determine his competency is not now re-

that might not be disclosed to counsel, the court ordered the Examiner to submit to it only the version of his report that did not include or rely upon the results of the MMPI–II. *See* Oct. 7, 2014 Order at 1–2 (Docket No. 1611). The government has requested a further explanation of the reasons for this Order. *See* Oct. 23, 2014 Gov't Resp. at 1, n. 1 (Docket No. 1622).

As discussed at the September 23, 2014 hearing and in prior Orders, and as more fully explained in this Memorandum, the administration of the MMPI–II test raises Fifth and Sixth Amendment issues which would have to be litigated and decided if the court relied upon, or arguably even read, a version of the Examiner's report that includes the results of the MMPI–II. It is also evident that disclosure of a report including results of the MMPI–II to the government's trial team, as it requests, would generate additional questions to be decided by this court and potential appellate issues as well. Such litigation would be adverse to the government's repeatedly expressed desire for the earliest possible resentencing hearing. *See, e.g.,* Gov't Mot. and Mem. Pursuant to 18 U.S.C. § 3006A (Docket No. 1633).

As the MMPI–II test is not necessary to the Examiner's opinion concerning Sampson's competency or to the decisions the court must make, the court has found that it is in the interest of justice to avoid time-consuming litigation of motions, that could prove meritorious, by receiving only the version of the Examiner's report that does not include or rely upon the results of the MMPI–II.

quired. *Id.; see also Bruck,* 152 F.3d at 46; *Lebron,* 76 F.3d at 32.

The decision to treat the Examiner's report as a report under Rule 12.2(c)(1)(A) leads to results not completely advocated by either party. Neither party will receive the Examiner's report, at least now.[4] Therefore, it is not necessary to decide whether, as Sampson argues, a second set of fire-walled attorneys should receive it on behalf of the government. Similarly, the Examiner's report will not now be available to either party's Rule 12.2 experts on mental condition. Sealing the report, and thus keeping the information it contains from the government trial lawyers and their experts, also eliminates the risk of time-consuming, and potentially meritorious, taint litigation that could delay, if not derail, the present sentencing proceeding. *Cf.* Rule 12.2(c)(4) & advisory committee's note.

If and when Sampson confirms his intent to introduce evidence concerning his mental condition, and the parties' Rule 12.2 expert reports are to be exchanged pursuant to Rule 12.2(c)(2) and (3), the court will decide whether the Examiner's report should be provided to the parties. If so, the court will also decide whether the report should be provided to the government in a form with redactions of, for example, information concerning Sampson's statements to his counsel. *See* Oct. 23, 2014 Def. Resp. at 14–15 (Docket No. 469). Similarly, if Sampson introduces expert evidence concerning his mental condition, but does not introduce evidence of incompetence, the court will decide whether the government may introduce his statements to the Examiner, or any evidence derived from them, under Rule 12.2(c)(4)(B) and, if so, whether the court should exclude such evidence as a matter of fairness under § 3593(c). It is unnecessary to decide these hypothetical questions now.

## VI. SAMPSON'S MOTION TO DISQUALIFY

■■■ As indicated earlier, Sampson's counsel contend that his mental condition should not be examined or tested until the court decides the disputed issue of whether the parties' experts and the government's trial team should be permitted to review and rely upon previous evaluations of Sampson, including the evidence presented at trial in 2003 pursuant to Rule 12.2, the evidence concerning his mental condition that was presented in support of Sampson's § 2255 claim of ineffective assistance of counsel, and the results of the recent competency evaluation. For the reasons described in § V, *supra,* the court has decided that it will not provide the Examiner's report to the parties, or their experts, at least until Rule 12.2 expert reports concerning Sampson's mental condition are exchanged. The court finds, however, that it is most appropriate to allow the experts for Sampson and the government to review all of the other relevant information so they can make well-informed evaluations of his mental condition and prepare to testify as to their decisions. When the court is advised of the proposed testimony concerning, or derived from, this information, it will decide, as an exercise of its equitable power or of its authority under 18 U.S.C. § 3593(c), whether the probative value of that evidence is outweighed by any unfairness to Sampson.

---

4. Not now providing the Examiner's report to the parties is consistent with the principle of aiming in these § 2255 proceedings to restore Sampson to the position he was in before trial in 2003, when neither party had access to any statements he made in a competency evaluation. *Cf. Morrison,* 449 U.S. at 364, 101 S.Ct. 665; *Gordon,* 156 F.3d at 381; *Bittaker,* 331 F.3d at 722.

Similarly, the court concludes that it is most appropriate—and, indeed, as a practical matter necessary—to allow the government's trial team to read the entire record of this case, including the evidence previously presented concerning Sampson's mental condition. If any specific allegations of unfairness emerge, the court will, again, exercise its equitable authority, or power under § 3593(c), to address it.

More specifically, in support of his Motion to Disqualify Government Team Members Exposed to Privileged or Confidential Materials Absent Adequate Alternative Safeguards (Docket Nos. 1356, 1357), Sampson contends that, because his sentence has been vacated, he must be restored to the position that he was in before his trial in 2003. Therefore, among other things, he asserts that the government's trial team should not be permitted to prepare for the resentencing hearing with knowledge of the Rule 12.2 evidence disclosed to the prosecutors and presented to the jury in 2003. Sampson makes a comparable claim with regard to the information concerning his mental condition that he presented, without a protective order, in support of his § 2255 petition. Sampson's counsel are apparently reluctant to provide this information to his own experts because of a concern that doing so will make otherwise unavailable information accessible to the government and its experts, although they do not explain their reasoning.

Sampson is essentially contending that the government's trial team be composed of prosecutors who are not fully familiar with the record of this case, including the substantial evidence concerning Sampson's mental condition that was presented in court in 2003, and the additional information, filed by Sampson for the public record, in this § 2255 proceeding. The court agrees with the government that this remedy would not be fair or feasible.

As explained earlier, § 2255 gives the court the power to fashion an appropriate remedy. *See Torres–Otero*, 232 F.3d at 30. Such a remedy should be " 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.' " *Gordon*, 156 F.3d at 381 (quoting *Morrison*, 449 U.S. at 364, 101 S.Ct. 665). A remedy tailored to the constitutional violation is "one that *as much as possible* restores [Sampson] to the circumstances that would have existed had there been no constitutional error." *Carmichael*, 216 F.3d at 227 (emphasis added).

In this case, the constitutional error resulted from misconduct by a juror. It was not an error made or caused by the government. Nor did the error relate to the development or presentation of evidence of Sampson's mental condition. Sampson's counsel have complete access to the information presented by the government in 2003, and may use it to prepare for the new sentencing hearing. To be balanced against Sampson's Fifth Amendment interests is the government's competing interest in preparing for that hearing. The court finds that it is in the interest of justice that the adversary process operates well and, ultimately, that a jury fairly informed by that process decide the most consequential question of whether Sampson should be executed.

In *Cheever*, 134 S.Ct. at 601, the Supreme Court recently reaffirmed that, where a defense expert testifies on an issue of mental condition, the prosecution may present expert evidence in rebuttal. The Court reasoned that "[a]ny other rule would undermine the adversarial process, allowing a defendant to provide the jury . . . a one-sided and potentially inaccurate view." *Id.* Comparable considerations prompt the court to reach a similar conclusion in denying Sampson's request that the

new sentencing proceeding be prosecuted by attorneys unfamiliar with the full record of this case and involve expert testimony not informed by relevant evidence presented previously.

As described earlier, when the issue of a protective order was raised, but not resolved, before Sampson's sentence was vacated, the government recognized that certain limitations on the use in future proceedings of information presented by Sampson might be appropriate. *See* Gov't's Reply [Mem.] in Support of Mot. for Discovery at 7–8 (Docket No. 990) at 7–8. Once again, if evidentiary issues involving the introduction of Sampson's statements to experts in prior proceedings, or related issues, arise, the court will exercise its equitable authority or power under § 3593(c) to resolve them fairly.[5] However, the court is not ordering that the government's trial team or experts proceed in ignorance of evidence concerning Sampson's mental condition that was previously presented.

## VII. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Sampson's Motion to Disqualify Government Team Members Exposed to Privileged or Confidential Materials (Docket Nos. 1356, 1357) is DENIED.

2. The government's Motion for Reconsideration concerning the competency report (Docket No. 1580) is DENIED.

3. After the November 12, 2014 hearing, orders implementing the decisions de-scribed in this Memorandum will be issued.

---

**5.** As stated earlier, Sampson presented in support of his ineffective assistance of counsel claim a few of his trial attorneys' notes and messages that would ordinarily be protected by the attorney-client privilege or work-product doctrine. If Sampson expresses particularized concerns about the government's use of specific documents, or the information they contain, prior to the November 12, 2014 hearing, the court will then consider whether a protective order limited to those documents should be issued. *See Bittaker*, 331 F.3d at 722.