(Slip Opinion)          OCTOBER TERM, 2013          1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is
being done in connection with this case, at the time the opinion is issued.
The syllabus constitutes no part of the opinion of the Court but has been
prepared by the Reporter of Decisions for the convenience of the reader.
See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## KANSAS *v.* CHEEVER

### CERTIORARI TO THE SUPREME COURT OF KANSAS

No. 12–609.   Argued October 16, 2013—Decided December 11, 2013

Shortly after respondent Cheever was charged with capital murder, the
Kansas Supreme Court found the State's death penalty scheme un-
constitutional.  State prosecutors then dismissed their charges to al-
low federal authorities to prosecute him.  When Cheever filed notice
that he intended to introduce expert evidence that methampheta-
mine intoxication negated his ability to form specific intent, the Fed-
eral District Court ordered Cheever to submit to a psychiatric evalua-
tion.  The federal case was eventually dismissed without prejudice.
Meanwhile, this Court held the State's death penalty scheme consti-
tutional, see *Kansas* v. *Marsh*, 548 U. S. 163.  The State then brought
a second prosecution.  At trial, Cheever raised a voluntary intoxica-
tion defense, offering expert testimony regarding his methampheta-
mine use.  In rebuttal, the State sought to present testimony from the
expert who had examined Cheever by the Federal District Court or-
der.  Defense counsel objected, arguing that since Cheever had not
agreed to the examination, introduction of the testimony would vio-
late the Fifth Amendment proscription against compelling an accused
to testify against himself.  The trial court allowed the testimony, and
the jury found Cheever guilty and voted to impose a death sentence.
The Kansas Supreme Court vacated the conviction and sentence, re-
lying on *Estelle* v. *Smith*, 451 U. S. 454, in which this Court held that
a court-ordered psychiatric examination violated a defendant's Fifth
Amendment rights when the defendant neither initiated the exami-
nation nor put his mental capacity in dispute.  The court distin-
guished the holding of *Buchanan* v. *Kentucky*, 483 U. S. 402, that a
State may introduce the results of such an examination for the lim-
ited purpose of rebutting a mental-status defense, on the basis that
voluntary intoxication is not a mental disease or defect under Kansas
law.

Syllabus

*Held*: The rule of *Buchanan*, reaffirmed here, applies in this case to permit the prosecution to offer the rebuttal evidence at issue. Pp. 4–10.

(a) In *Buchanan,* the prosecution presented evidence from a court-ordered evaluation to rebut the defendant's affirmative defense of extreme emotional disturbance. This Court concluded that this rebuttal testimony did not offend the Fifth Amendment, holding that when a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit an offense, the prosecution may present psychiatric evidence in rebuttal. *Buchanan*'s reasoning was not limited to the circumstance that the evaluation was requested jointly by the defense and the government. Nor did the case turn on whether state law referred to extreme emotional disturbance as an affirmative defense. Pp. 4–6.

(b) The admission of rebuttal testimony under the rule of *Buchanan* harmonizes with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination. See *Fitzpatrick* v. *United States*, 178 U. S. 304, 315. Here, the prosecution elicited testimony from its expert only after Cheever offered expert testimony about his inability to form the requisite *mens rea.* Excluding this testimony would have undermined *Buchanan* and the core truth-seeking function of trial. Pp. 6–7.

(c) This Court is not persuaded by the Kansas Supreme Court's reasoning that Cheever did not waive his Fifth Amendment privilege because voluntary intoxication is not a mental disease or defect as a matter of state law. "Mental disease or defect" is not the salient phrase under this Court's precedents, which use the much broader phrase "mental status," *Buchanan,* 483 U. S., at 423. Mental-status defenses include those based on psychological expert evidence as to a defendant's *mens rea*, mental capacity to commit the crime, or ability to premeditate. To the extent that the Kansas Supreme Court declined to apply *Buchanan* because Cheever's intoxication was "temporary," this Court's precedents are again not so narrowly circumscribed, as evidenced by the fact that the courts where Buchanan was tried treated his extreme emotional disturbance as a "temporary" condition. Pp. 7–8.

(d) This Court declines to address in the first instance Cheever's contention that the prosecution's use of the court-ordered psychiatric examination exceeded the rebuttal-purpose limit established by *Buchanan*, see 483 U. S., at 424. Pp. 9–10.

295 Kan. 229, 284 P. 3d 1007, vacated and remanded.

SOTOMAYOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 12–609

_____

## KANSAS, PETITIONER *v.* SCOTT D. CHEEVER

ON WRIT OF CERTIORARI TO THE SUPREME COURT OF KANSAS

[December 11, 2013]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." The question here is whether the Fifth Amendment prohibits the government from introducing evidence from a court-ordered mental evaluation of a criminal defendant to rebut that defendant's presentation of expert testimony in support of a defense of voluntary intoxication. We hold that it does not.

I

On the morning of January 19, 2005, Scott Cheever shot and killed Matthew Samuels, a sheriff of Greenwood County, Kansas, and shot at other local law enforcement officers. In the hours before the shooting, Cheever and his friends had cooked and smoked methamphetamine at a home near Hilltop, Kansas. Samuels and multiple deputies drove there to arrest Cheever on an unrelated outstanding warrant.

When one of Cheever's friends warned him that officers were en route, Cheever rushed outside and tried to drive away, but his car had a flat tire. He returned inside and hid with a friend in an upstairs bedroom, holding a loaded

.44 caliber revolver. Cheever then heard footsteps on the stairs leading up to the room, and he stepped out and shot Samuels, who was climbing the stairs. After briefly returning to the bedroom, Cheever walked back to the staircase and shot Samuels again. He also shot at a deputy and a detective, as well as members of a local SWAT (special weapons and tactics) team that had since arrived. Only Samuels was hit.

The State charged Cheever with capital murder. But shortly thereafter, in an unrelated case, the Kansas Supreme Court found the State's death penalty scheme unconstitutional. *State* v. *Marsh*, 278 Kan. 520, 102 P. 3d 445 (2004). Rather than continuing to prosecute Cheever without any chance of a death sentence, state prosecutors dismissed their charges and allowed federal authorities to prosecute Cheever under the Federal Death Penalty Act of 1994, 18 U. S. C. §3591 *et seq.*

In the federal case, Cheever filed notice that he "intend[ed] to introduce expert evidence relating to his intoxication by methamphetamine at the time of the events on January 19, 2005, which negated his ability to form specific intent, *e.g.,* malice aforethought, premeditation and deliberation." App. to Pet. for Cert. 69–70. Pursuant to Federal Rule of Criminal Procedure 12.2(b), the District Court ordered Cheever to submit to a psychiatric evaluation by Michael Welner, a forensic psychiatrist, to assess how methamphetamine use had affected him when he shot Samuels. Welner interviewed Cheever for roughly five and a half hours.

The federal case proceeded to trial. Seven days into jury selection, however, defense counsel became unable to continue; the court suspended the proceedings and later dismissed the case without prejudice. Meanwhile, this Court had reversed the Kansas Supreme Court and held that the Kansas death penalty statute was constitutional. *Kansas* v. *Marsh*, 548 U. S. 163, 167 (2006). A second

federal prosecution never commenced.

Kansas then brought a second state prosecution. At the state trial, Cheever presented a voluntary-intoxication defense, arguing that his methamphetamine use had rendered him incapable of premeditation. In support of this argument, Cheever offered testimony from Roswell Lee Evans, a specialist in psychiatric pharmacy and dean of the Auburn University School of Pharmacy. Evans opined that Cheever's long-term methamphetamine use had damaged his brain.[1] Evans also testified that on the morning of the shooting, Cheever was acutely intoxicated. According to Evans, Cheever's actions were "very much influenced by" his use of methamphetamine.

After the defense rested, the State sought to present rebuttal testimony from Welner, the expert who had examined Cheever by order of the federal court. Defense counsel objected, arguing that because Welner's opinions were based in part on an examination to which Cheever had not voluntarily agreed, his testimony would violate the Fifth Amendment proscription against compelling an accused to testify against himself. The State countered that the testimony was necessary to rebut Cheever's voluntary-intoxication defense.

The trial court agreed with the State. The court was persuaded, in part, by the fact that the defense expert had himself relied on Welner's examination report: "I think that fact alone probably allows the State to call [Welner] to give his own point of view." App. 92. The court allowed Welner's testimony for the purpose of showing that Cheever shot Samuels "because of his antisocial personality, not because his brain was impaired by methamphetamine." *Id.,* at 94.

---

[1] Evans described this damage as "neurotoxicity," which is "the quality of exerting a destructive or poisonous effect upon the nerve tissue." The Sloane-Dorland Annotated Medical-Legal Dictionary 498 (1987).

The jury found Cheever guilty of murder and attempted murder. At the penalty phase, it unanimously voted to impose a sentence of death, and the trial court accepted that verdict.

On appeal to the Kansas Supreme Court, Cheever argued that the State had violated his Fifth Amendment rights when it introduced, through Welner's testimony, statements that he had made during the federal court-ordered mental examination. The court agreed, relying primarily on *Estelle* v. *Smith*, 451 U. S. 454 (1981), in which we held that a court-ordered psychiatric examination violated the defendant's Fifth Amendment rights when the defendant neither initiated the examination nor put his mental capacity in dispute at trial. 295 Kan. 229, 243–244, 284 P. 3d 1007, 1019–1020 (2012) (*per curiam*). The court acknowledged, *id.*, at 244–245, 284 P. 3d, at 1020, our holding that a State may introduce the results of a court-ordered mental examination for the limited purpose of rebutting a mental-status defense. *Buchanan* v. *Kentucky*, 483 U. S. 402, 423–424 (1987). But it distinguished *Buchanan* on the basis that under Kansas law, voluntary intoxication is not a "mental disease or defect." 295 Kan., at 250, 284 P. 3d, at 1023. Consequently, it vacated Cheever's conviction and sentence, holding that Cheever had not waived his Fifth Amendment privilege and that his federal court-ordered examination should not have been used against him at the state-court trial. *Ibid.* We granted certiorari, 568 U. S. ___ (2013), and now reverse.

## II

The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." We held in *Estelle* that under the Fifth Amendment, when a criminal defendant "neither initiates a psychiatric evaluation nor attempts to intro-

duce any psychiatric evidence," his compelled statements
to a psychiatrist cannot be used against him. 451 U. S., at
468. In that case, a judge ordered a psychiatric exam-
ination to determine the defendant's competency to stand
trial. *Id.,* at 456–457. The prosecution then used state-
ments from that examination during the sentencing phase
of the trial as evidence of the defendant's future danger-
ousness. *Id.,* at 458–460. Emphasizing that the defend-
ant had neither "introduced" any "psychiatric evidence,"
nor even "indicated that he might do so," *id.,* at 466, we
concluded that the Fifth Amendment did not permit the
State to use the defendant's statements in this manner.

In *Buchanan*, we addressed the admissibility of evi-
dence from a court-ordered evaluation where—unlike in
*Estelle*—a defendant had introduced psychiatric evidence
related to his mental-status defense. We held that the
Fifth Amendment allowed the prosecution to present
evidence from the evaluation to rebut the defendant's
affirmative defense of extreme emotional disturbance.
And while, as Cheever notes, the mental evaluation in
*Buchanan* was requested jointly by the defense and the
government, our holding was not limited to that circum-
stance. Moreover, contrary to Cheever's suggestion, the
case did not turn on whether state law referred to extreme
emotional disturbance as an "affirmative defense." *Bu-
chanan*, 483 U. S., at 408, 422 (holding that the prosecu-
tion's use of rebuttal expert testimony is permissible
where a defendant "presents psychiatric evidence"). The
rule of *Buchanan*, which we reaffirm today, is that where
a defense expert who has examined the defendant testifies
that the defendant lacked the requisite mental state to
commit an offense, the prosecution may present psychiat-
ric evidence in rebuttal. *Ibid.* Any other rule would un-
dermine the adversarial process, allowing a defendant to
provide the jury, through an expert operating as proxy,
with a one-sided and potentially inaccurate view of his

mental state at the time of the alleged crime.

The admission of this rebuttal testimony harmonizes with the principle that when a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination. A defendant "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts." *Fitzpatrick* v. *United States*, 178 U. S. 304, 315 (1900). We explained in *Brown* v. *United States*, 356 U. S. 148 (1958), which involved a witness's refusal to answer questions in a civil case, that where a party provides testimony and then refuses to answer potentially incriminating questions, "[t]he interests of the other party and regard for the function of courts of justice to ascertain the truth become relevant, and prevail in the balance of considerations determining the scope and limits of the privilege against self-incrimination." *Id.,* at 156. When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him. See *United States* v. *Byers*, 740 F. 2d 1104, 1113 (CADC 1984) (en banc) (holding that the Government could present rebuttal expert testimony in part because it is perhaps "the most trustworthy means of attempting to meet" the burden of proof (internal quotation marks omitted)).[2]

The prosecution here elicited testimony from its expert only after Cheever offered expert testimony about his inability to form the requisite *mens rea*. The testimony of the government expert rebutted that of Cheever's expert. See *id.* at 1114 ("Ordinarily the only effective rebuttal of

———————

[2] For that reason, we reject Cheever's suggestion that the State could effectively have rebutted the testimony of his expert by introducing testimony from experts who had not personally examined him.

psychiatric opinion testimony is contradictory opinion testimony; and for that purpose . . . the basic tool of psychiatric study remains the personal interview, which requires rapport between the interviewer and the subject" (internal quotation marks omitted)); *State* v. *Druke*, 143 Ariz. 314, 318, 693 P. 2d 969, 973 (App. 1984) ("[A]n inference would arise that the evidence presented by the [defendant] as to his mental condition is true because uncontradicted"). The trial court therefore did not violate the Fifth Amendment when it allowed Welner to testify that Cheever "made a choice to shoot," App. 131, because the State permissibly followed where the defense led. Excluding this testimony would have undermined *Buchanan* and the core truth-seeking function of the trial.

## III

Neither the Kansas Supreme Court's reasoning, nor Cheever's arguments, persuade us not to apply the settled rule of *Buchanan*.

## A

Although the Kansas Supreme Court acknowledged that the State may present evidence obtained from a compelled psychiatric examination when "the defendant presents evidence at trial that he or she lacked the requisite criminal intent due to mental disease or defect," 295 Kan., at 249, 284 P. 3d, at 1023, it reasoned that voluntary intoxication is not a "mental disease or defect" as a matter of state law. *Id.*, at 250, 284 P. 3d, at 1023–1024 (citing *State* v. *Kleypas*, 272 Kan. 894, 40 P. 3d 139 (2001)). The court therefore concluded that "Cheever did not waive his Fifth Amendment privilege and thus permit his court-ordered examination by Dr. Welner to be used against him at trial." 295 Kan., at 251, 284 P. 3d, at 1024.

This reasoning misconstrues our precedents. Although Kansas law defines "mental disease or defect" narrowly, to

exclude voluntary intoxication, that phrase is actually not the salient one under our precedents. In *Buchanan*, we permitted rebuttal testimony where the defendant presented evidence of "the 'mental status' defense of extreme emotional disturbance." 483 U. S., at 423. And "mental status" is a broader term than "mental disease or defect," at least to the extent that Kansas law excludes voluntary intoxication from that definition. Mental-status defenses include those based on psychological expert evidence as to a defendant's *mens rea*, mental capacity to commit the crime, or ability to premeditate. Defendants need not assert a "mental disease or defect" in order to assert a defense based on "mental status."

To the extent that the Kansas Supreme Court declined to apply *Buchanan* because Cheever's intoxication was "temporary," our precedents are again not so narrowly circumscribed. Like voluntary intoxication, extreme emotional disturbance is a "temporary" condition, at least according to the Kentucky state courts where Buchanan was tried. See *McClellan* v. *Commonwealth*, 715 S. W. 2d 464, 468–469 (Ky. 1986) (defining extreme emotional disturbance as "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of [an] extreme emotional disturbance rather than from evil or malicious purposes"). We nonetheless held in *Buchanan* that the defense of extreme emotional disturbance, when supported by expert testimony, may be rebutted with expert testimony. The same is true here. Cheever's psychiatric evidence concerned his mental status because he used it to argue that he lacked the requisite mental capacity to premeditate. The Fifth Amendment therefore did not bar the State from using Welner's examination to rebut Cheever's voluntary-intoxication defense.

## B

Cheever further contends that the Fifth Amendment imposes limits on the State's ability to introduce rebuttal evidence regarding a defendant's mental status. According to Cheever, Welner's testimony exceeded these limits by describing the shooting from Cheever's perspective;[3] by insinuating that he had a personality disorder; and by discussing his alleged infatuation with criminals.

We have held that testimony based on a court-ordered psychiatric evaluation is admissible only for a "limited rebuttal purpose." *Buchanan*, 483 U. S., at 424. In *Buchanan*, for example, although the prosecution had used a psychiatric report to rebut the defendant's evidence of extreme emotional disturbance, we noted that the trial court had redacted the report so as to avoid exposing the jury to "the very different issue" of the defendant's competency to stand trial. *Id.*, at 423, n. 20. Two years later, we explained in dictum that "[n]othing" in our precedents "suggests that a defendant opens the door to the admission of psychiatric evidence on future dangerousness by raising an insanity defense at the guilt stage of the trial." *Powell* v. *Texas*, 492 U. S. 680, 685–686, n. 3 (1989) (*per curiam*). Here, however, the Kansas Supreme Court did not address whether Welner's testimony exceeded the scope of rebuttal testimony permitted by the Fifth Amendment or by the State's evidentiary rules. We accordingly decline to address this issue in the first

————————

[3] In an extended soliloquy, Dr. Welner narrated the crime from Cheever's perspective, in part as follows: "I don't jump out of the window the way my confederate later does. And when I do shoot, I don't shoot before Matthew Samuels walks through the curtain in such a way that I might scare him, the way my later shots frightened the deputies that came to pull him away, but I shoot him at a point in which he is very much within my range, has passed through that curtain, and I know that he is coming upstairs, and that is when I shoot." App. 130–131.

instance.[4]

\* \* \*

We hold that where a defense expert who has examined the defendant testifies that the defendant lacked the requisite mental state to commit a crime, the prosecution may offer evidence from a court-ordered psychological examination for the limited purpose of rebutting the defendant's evidence.

The judgment of the Kansas Supreme Court is therefore vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

---

[4] Kansas contends that reaching a federal constitutional question may not be necessary because Cheever argued in opposing certiorari that the scope of Welner's testimony violated state evidentiary rules. Reply Brief 4–5. We agree with the State that the impact of Kansas evidentiary rules is a matter best left to the state courts to decide on remand. We do observe, however, that while our holding today suggests a constitutional ceiling on the scope of expert testimony that the prosecution may introduce in rebuttal, States (and Congress) remain free to impose additional limitations on the scope of such rebuttal evidence in state and federal trials.