

**NOT FOR PUBLICATION**

FILED

MAR 03 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL WAYNE HUNTER, | No. 10-17926 |
| Petitioner - Appellant, | D.C. No. 5:06-cr-07707-JW |
| v. | |
| P.D. BRAZELTON, Warden, and MATTHEW L. CATE, Secretary of the California Dept. of Corrections and Rehabilitation, | MEMORANDUM[*] |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the Northern District of California
James Ware, District Judge, Presiding

Argued and Submitted February 10, 2014
San Francisco, California

Before: TALLMAN and RAWLINSON, Circuit Judges, and RICE, District
Judge.[**]

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Thomas O. Rice, United States District Judge for the
Eastern District of Washington, sitting by designation.

Michael Wayne Hunter ("Hunter") appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a). As the parties are familiar with the facts, we recite them only as necessary to explain our decision. We affirm.

We assume, without deciding, that the state trial court erred in finding that Hunter waived any claim of privilege to the materials in his first attorney's case file by disclosing the materials in *Hunter Habeas I*. We must decide whether this error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *accord Pulido v. Chrones*, 629 F.3d 1007, 1012 (9th Cir. 2010), *cert. denied*, 132 S. Ct. 338 (2011). We conclude that it did not.

First, the State confined its use of Dr. Berg's testimony and the Aniline letter to impeachment and rebuttal of Hunter's diminished capacity defense. This limited use of the contested evidence was permissible. *See Harris v. New York*, 401 U.S. 222, 225 (1971) (holding that a defendant who chooses to testify in his or her own defense may not conceal contradictory statements obtained in violation of the Fifth Amendment from the jury); *Buchanan v. Kentucky*, 483 U.S. 402, 422-23 (1987) (holding that a defendant who asserts a diminished capacity defense through the testimony of an examining psychiatrist waives his or her Fifth Amendment

2

privilege against self-incrimination as to any statements made to the psychiatrist); *Kansas v. Cheever*, ___ U.S. ___, 134 S. Ct. 596, 601 (2013) ("When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him."). Contrary to Hunter's assertions, *Simmons v. United States*, 390 U.S. 377 (1968), does not foreclose this limited use of the contested evidence. *See Kansas v. Ventris*, 556 U.S. 586, 594 (2009) (noting that with the exception of coerced statements, "tainted evidence—evidence whose very introduction does not constitute the constitutional violation, but whose obtaining was constitutionally invalid—is admissible for impeachment"). Moreover, even if we assume for the sake of argument that Hunter's statements to Dr. Berg and Dr. Aniline were effectively "coerced," there was no constitutional violation. *See Cheever*, 134 S. Ct. at 601 (holding that statements made during a compulsory psychological examination are admissible to rebut a defendant's diminished capacity defense).

Second, Hunter's diminished capacity defense was severely undermined by evidence of advance planning and organized thinking. The evidence adduced at both trials showed, for example, that Hunter made statements to his friends about wanting to kill his father, that he used a borrowed identification card to purchase

3

the murder weapon, that he wore gloves and a motorcycle helmet to conceal his identity while committing the crimes, that he destroyed evidence after the murders to conceal his role in the crimes, and that he executed an elaborate plan to flee to Mexico in the days after the killings. In view of this evidence, any constitutional error in the State's use of the contested evidence to impeach Hunter's testimony and to rebut his diminished capacity defense could not have had a substantial and injurious effect or influence on the jury's verdict.

We are not persuaded that the State's access to the materials in Hunter's defense file amounts to structural error. Given that Hunter was represented by counsel and tried by an impartial jury, we must apply a "strong presumption" that any constitutional error is subject to harmless error analysis. *Rose v. Clark*, 478 U.S. 570, 578-79 (1986). Although the state trial court's ruling "jeopardize[d] the fairness of [Hunter's] second trial," *Bittaker v. Woodford*, 331 F.3d 715, 723 n.7 (9th Cir. 2003), the record before us does not "defy analysis by 'harmless-error' standards," *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991). The central issue at both trials was whether Hunter was capable of forming the intent to commit first-degree murder. There were very few disputed issues of fact; Hunter testified and admitted to killing his father and stepmother, and there was substantial forensic documentation of the manner in which the killings were committed. As a result,

4

Hunter's attorney had relatively few strategic decisions to make. Thus, any strategic advantage the State may have gained by having access to the materials in Hunter's defense file was negligible. We therefore conclude that the state trial court's ruling did not have a substantial and injurious effect or influence on the jury's verdict. *Brecht*, 507 U.S. at 637.

Finally, we conclude that Hunter suffered no additional prejudice as a result of the alleged prosecutorial misconduct. In light of our conclusions above, this claim does not provide an independent basis for granting the petition.

The decision of the California appellate courts to deny habeas relief was not objectively unreasonable under AEDPA. The decision of the federal district court denying federal habeas relief is therefore **AFFIRMED.**