[Cite as *State v. Madison*, 2015-Ohio-4365.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101478**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL MADISON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-579539-A

**BEFORE:** Celebrezze, A.J., E.T. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 22, 2015

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Erika B. Cunliffe
        Jeffrey Gamso
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Christopher D. Schroeder
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., A.J.:

**{¶1}** Defendant-appellant, Michael Madison ("Madison"), brings this appeal challenging the trial court's order granting the state of Ohio's motion to compel a psychiatric evaluation of Madison. Specifically, appellant argues that the trial court does not have the authority to compel Madison to submit to a psychiatric evaluation when Madison's mental state or psychological status is not at issue, and that Madison should be able to exercise his Eighth Amendment right to present mitigating evidence without sacrificing his Fifth Amendment right against self-incrimination. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

**{¶2}** On October 28, 2013, the Cuyahoga County Grand Jury returned a 14-count indictment charging appellant with six counts of aggravated murder. All six counts were accompanied by death penalty specifications under R.C. 2929.04(A)(5) and 2929.04(A)(7). The matter was set for trial on July 21, 2014.

**{¶3}** Following his indictment in this case, Madison's defense team retained two psychiatric experts to evaluate him — Dr. Daniel A. Davis, a forensic psychologist, and Dr. James Karpawich, a clinical psychologist. Defense counsel plans to introduce the psychiatric expert testimony as mitigation evidence during the penalty phase of the proceedings. During pretrial discovery, the defense provided copies of the expert reports to appellee, the state. Dr. Davis's report included the following relevant comments and conclusions:

* A substantial body of research documents the negative impact of the effects of abuse and trauma upon the developing brain. It is well documented in the research literature that exposure to trauma can have profound negative effects upon the developing child. These effects are physical and chemical in nature that result in subsequent psychological dysfunction. Specifically, exposure to violence, verbal and physical abuse results in an imbalance in an important chemical, cortisol, in the brain that results in damage to structures of the brain such as the hippocampus that is responsible for the control of memory, emotions, and attention. Exposure to abuse has also been shown to affect the limbic system (the emotional seat of the brain) especially the amygdala, an area of the brain critically involved in moods, emotions such as anger and fear and emotional learning.

* Thus, the extreme trauma and abuse experienced by Mr. Madison resulted in a neurobiologically determined pathway placing him at much greater risk for psychological, behavioral and substance abuse problems.

* [Madison's] instability as a youth as well as potentially his family history, suggests the potential of a possible underlying mood disorder, likely Posttraumatic Stress Disorder or at a minimum, a need for a psychiatric consultation.

* In Mr. Madison's case, it is highly likely that his early victimization resulted in severe behavioral symptoms that are frequently associated with Posttraumatic Stress Disorder in males.

* Youth who come from markedly abusive and dysfunctional environments do not have the chance to learn appropriate social coping skills, skills to regulate emotions, skills to control impulses and skills to relate in positive, socially appropriate ways.

* As an adult, [Madison] presented with substance abuse, behavioral instability as well as antisocial behaviors.

{¶4} Preparing to rebut his expert testimony, the state moved for an order compelling a psychiatric evaluation of Madison by the state's expert, Dr. Steven E. Pitt. Defense counsel objected to the evaluation proposed by the state, arguing that it had no intention of putting Madison's mental state in issue — either in the trial or penalty phase

— and only intended to introduce the expert testimony as mitigating evidence during the penalty phase. At the conclusion of the June 3, 2014 hearing on the state's motion, the trial court granted the state's motion, ruling:

> You may not use it during the guilt/non-guilt phase. You can only use it in mitigation. The State will be able to have an examination of the defendant. However, it is limited only to brain damage and issues like that. There may be no questioning about the facts and circumstances of this particular case.

(Tr. 24-25.)

{¶5} Madison filed a notice of appeal in this court and an emergency motion to stay the trial court's order. The state moved to dismiss the appeal, arguing that the ruling on the motion was not a final, appealable order pursuant to R.C. 2505.02(B). This court denied the state's motion to dismiss — finding the trial court's ruling to be a final, appealable order under R.C. 2505.02(B)(4) — on the grounds that Madison's Fifth Amendment testimonial privilege is a provisional remedy. Therefore, the issue as to whether Madison can be compelled to submit to the psychiatric examination is ripe for hearing and judgment.

{¶6} On June 30, 2014, the state filed a writ of prohibition in the Supreme Court of Ohio, again challenging this court's jurisdiction to entertain the appeal under R.C. 2505.02. The Supreme Court dismissed the state's complaint and subsequent motion for reconsideration.

{¶7} Appellant filed the instant appeal assigning two errors for review:

> I. The trial court has no authority to compel a defendant to submit to a psychiatric evaluation by a prosecution expert where that evaluation's

explicit purpose is to rebut mitigation evidence the defense has repeatedly denied any intention of presenting.

II. A capital defendant should be able to exercise his 8th Amendment right to develop and present mitigating evidence for a possible penalty phase without sacrificing his 5th Amendment privilege against self-incrimination.

## II. Law and Analysis

**{¶8}** Constitutional analysis involves a question of law that is subject to de novo review. *Ornelas v. United States*, 517 U.S. 690, 698-99, 116 S.Ct. 1657 134 L.Ed.2d 911 (1996) (stating legal conclusions of trial court are reviewed de novo).

### A. Mental Condition Controversy

**{¶9}** In his first assignment of error, Madison argues that the trial court had no authority to compel him to submit to a psychiatric evaluation by the state's expert where that evaluation's explicit purpose is to rebut mitigation evidence that the defense does not intend to present. Specifically, Madison argues that the state's expert, Dr. Pitt, has no right to perform an evaluation because: (1) Madison is not arguing that his mental condition made him incapable of prior calculation and design or from acting purposefully, and (2) Madison is not asserting any mental condition as an affirmative defense in the criminal liability phase of the proceedings. Therefore, Madison argues, the state is not entitled to a psychiatric evaluation because his mental health is not in controversy.

**{¶10}** However, Madison concedes he anticipates introducing the expert testimony of Dr. Davis and Dr. Karpawich during the penalty phase of the proceedings as mitigating evidence. Specifically, Madison intends to introduce the expert testimony to illustrate how the physical abuse and neglect he experienced as a child resulted in damage — both

physical and chemical — to his brain. The state maintains that it is entitled to its own psychiatric evaluation to rebut the mitigation evidence, including psychological issues, that Madison introduces during the penalty phase.

{¶11} The United States Supreme Court precedent holds that a defendant's Fifth Amendment privilege against self-incrimination applies to the penalty phase of a capital case. *White v. Woodall*, ___U.S.___, 134 S.Ct. 1697, 1699, 188 L.Ed.2d 698 (2013). Further, it is undisputed that "when a criminal defendant 'neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence,' his compelled statements to a psychiatrist cannot be used against him." *Kansas v. Cheever*, ___U.S.___, 134 S.Ct. 596, 601, 187 L.Ed.2d 519 (2013), quoting *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981). However, when a defendant introduces psychiatric evidence and places his state of mind directly at issue at trial, he may be compelled to submit to a psychiatric evaluation. *Buchanan v. Kentucky*, 483 U.S. 402, 422-424, 107 S.Ct. 2906, 97 L.Ed.2d 336 (1987).

{¶12} There are no criminal rules governing whether or when a court may order a defendant to submit to a psychological examination. However, there is an applicable civil rule: Civ.R. 35(A). Crim.R. 57(B) permits a trial court in a criminal case to look to the civil rules for guidance when no applicable rule of criminal procedure exists. *State v. Schlee*, 117 Ohio St.3d 153, 154, 2008-Ohio-545, 882 N.E.2d 431, ¶ 1. Ohio courts, including this court, have generally been guided by Civ.R. 35(A) in criminal cases. *See e.g. State v. Ervin*, 8th Dist. Cuyahoga No. 80473, 2002-Ohio-4093, ¶ 69-70.

{¶13} Civ.R. 35(A) allows a trial court to order a party to submit to a mental examination when the mental condition of the party is in controversy. Specifically, Civ.R. 35(A) states, in its entirety:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit himself to a physical or mental examination or to produce for such examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

{¶14} A party's mental condition is "in controversy" when it is "directly involved in some material element of the cause of action or defense." *In re Guardianship of Johnson*, 35 Ohio App.3d 41, 44, 519 N.E.2d 655 (10th Dist.1987). The "in controversy" element is established when the mental condition of a party is a relevant factor in the case. *Brossia v. Brossia*, 65 Ohio App.3d 211, 215, 583 N.E.2d 978 (6th Dist.1989).

{¶15} R.C. 2929.04 lists the criteria to be considered in deciding whether to impose a death sentence in a capital case. R.C. 2929.04(B)(3) specifically allows the court to determine "[whether], at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law."

**{¶16}** Despite statements to the contrary, Madison admitted at the trial court hearing that he intends to present expert testimony of his mental condition as mitigating evidence to avoid the death penalty should the case proceed to the penalty phase. Therefore, Madison has made his mental condition a relevant factor in determining whether a death sentence is appropriate.

**{¶17}** Madison argues that the facts about his past detailed in the expert reports — while perhaps mitigating — "do not constitute evidence relating to his mental state." However, Dr. Davis's report contains several conclusions about Madison's mental condition — conclusions that Madison intends to introduce as mitigating evidence — including:

> * Exposure to childhood trauma had physical and chemical effects on Madison's brain that result in subsequent psychological dysfunction.
>
> * Exposure to violence, verbal and physical abuse results in an imbalance in an important chemical, cortisol, in the brain that results in damage to structures of the brain such as the hippocampus that is responsible for the control of memory, emotions, and attention.
>
> * Exposure to abuse has also been shown to affect the limbic system (the emotional seat of the brain) especially the amygdala, an area of the brain critically involved in moods, emotions such as anger and fear and emotional learning.
>
> * Exposure to abuse during critical times can result in damage to structures such as the frontal lobes that are critical for executive functions, such as attention, working memory, motivation, and behavioral inhibition.
>
> * The supposed damage to Madison's frontal lobes results in an inability to plan and anticipate outcomes, to be flexible, to self-monitor and show good judgment and be aware of one's self and one's impact upon others.

* Thus, the extreme trauma and abuse experienced by Mr. Madison resulted in a neurobiologically determined pathway placing him at much greater risk for psychological, behavioral and substance abuse problems. [Madison's] instability as a youth as well as potentially his family history, suggests the potential of a possible underlying mood disorder, likely Posttraumatic Stress Disorder or at a minimum, a need for a psychiatric consultation.

* In Mr. Madison's case, it is highly likely that his early victimization resulted in severe behavioral symptoms that are frequently associated with Posttraumatic Stress Disorder in males.

* Youth who come from markedly abusive and dysfunctional environments do not have the chance to learn appropriate social coping skills, skills to regulate emotions, skills to control impulses and skills to relate in positive, socially appropriate ways.
* As an adult, [Madison] presented with substance abuse, behavioral instability as well as antisocial behaviors.

{¶18} Dr. Davis's report raises nine potential issues regarding Madison's mental state. Madison argues that Dr. Davis does not make a diagnosis — pursuant to R.C. 2929.04(B)(3) — in his report. Although the report does not make a psychiatric diagnosis, Madison's brain and mental condition is nevertheless in controversy because the state submits that none of these statements are true.

{¶19} Madison raises R.C. 2945.371 in support of his position that the state is not entitled to a psychiatric evaluation. R.C. 2945.371(A) states:

> If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged. An examiner shall conduct the evaluation.

Thus, because neither competency nor sanity is in issue, Madison argues that the trial court was not authorized to order a psychiatric evaluation. In *State v. Goff*, the

defendant intended to introduce expert testimony from a psychiatric examination to support her self-defense claim. *State v. Goff*, 128 Ohio St.3d 169, 2010-Ohio-6317, 942 N.E.2d 1075, ¶ 3. The Supreme Court of Ohio held that the trial court had the authority to order a compelled psychiatric evaluation of defendant, stating:

> By putting her mental state directly at issue and introducing expert testimony based upon her own statements to the expert, the defendant opens the door to a limited examination by the state's expert concerning battered-woman syndrome and its effect on the defendant's behavior.

*Id*. at ¶ 58. Here, Madison's mental state is at issue because the state disputes the conclusions that Dr. Davis makes in his report.

**{¶20}** Madison further argues that the state can effectively rebut his expert testimony without conducting a personal and independent psychiatric evaluation. Specifically, Madison argues that the expert testimony he intends to introduce "does not include a diagnosis, and is not predicated on his statements to the expert," and instead is "based on his expert's research on risk factors relating to violent behavior and on historical facts of Mr. Madison's life."

**{¶21}** The only way to rebut Madison's expert testimony is through expert testimony. *In re Guardianship of Johnson*, 35 Ohio App.3d at 44, 519 N.E.2d 655. "When a defendant presents evidence through a psychological expert who has examined him, the government likewise is permitted to use the only effective means of challenging that evidence: testimony from an expert who has also examined him." *Cheever*, 134 S.Ct. at 601, 187 L.Ed.2d 519 (2013); *see also United States v. Byers*, 740 F.2d 1104, 1113 (D.C.Cir.1984) (en banc) (holding that the government could present rebuttal expert

testimony in part because it is perhaps "the most trustworthy means of attempting to meet" the burden of proof. *Byers* quoting *Pope v. United States,* 372 F.2d 710, 720 (8th Cir.1967)). Furthermore, "[i]t is unfair and improper to allow a defendant to introduce favorable psychological testimony and then prevent the prosecution from resorting to the most effective and in most instances the only means of rebuttal: other psychological testimony." *Goff* at ¶ 46, citing *Schneider v. Lynaugh*, 835 F.2d 570, 576 (5th Cir.1988).

{¶22} We conclude that to allow Madison to present expert evidence of his mental condition without allowing the state to investigate Madison's claims and present a case in rebuttal is not fair and "would undermine the adversarial process, allowing a defendant to provide the jury * * * a one-sided and potentially inaccurate view," unfairly tipping the weight of the evidence in his favor. *Cheever* at 601.

{¶23} The trial court's order is aimed at protecting — and does adequately protect — Madison's Fifth Amendment privilege. "The limitation on a defendant's bedrock constitutional right against self-incrimination must be carefully tailored to avoid any more infringement than is necessary to ensure a fair trial." *Goff* at ¶ 30. Here, the order "is limited only to brain damage and issues like that." The court further ordered: "[t]here may be no questioning about the facts and circumstances of this particular case." The court's order restricting the scope of the psychiatric evaluation is sufficiently tailored to protect Madison from an unreasonable infringement on his Fifth Amendment privilege against self-incrimination.

**{¶24}** "Courts have the inherent authority to preserve the fairness in the trial process, and allowing defendant to present expert testimony * * * while denying the prosecution the ability to introduce such evidence would unfairly handicap the prosecution and prevent the trier of fact from making an informed decision." *Goff* at ¶ 46. While his expert testimony does not include a mental status diagnosis or raise an affirmative defense, Madison has made his mental condition a material issue for a possible penalty phase of the proceedings. Therefore, the state is entitled to its own evaluation solely for the purposes of rebutting the evidence Madison presents concerning his brain damage and mental condition. The examination authorized by the court's order is limited to the sole issue in controversy—the nature and extent of Madison's brain damage.

**{¶25}** The first assignment of error is overruled.

### B. Eighth Amendment

**{¶26}** In the second assignment of error, Madison argues that he should be able to exercise his Eighth Amendment right to present mitigating evidence for a possible penalty phase without sacrificing his Fifth Amendment privilege against self-incrimination.

**{¶27}** Because of the uniquely severe and irrevocable nature of the death penalty, defendants in capital cases are afforded "wide latitude in introducing evidence alleged to be mitigating." *State v. Eley*, 77 Ohio St.2d 174, 185, 672 N.E.2d 640 (1996). Thus, the scope of the evidence a defendant may introduce is comprehensive and includes expert psychiatric or psychological testimony, details from his social history, education,

medical and mental health, as well as other things. *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263. The United States Supreme Court acknowledged that this kind of evidence "is relevant because of the belief, long held by society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional or mental problems, may be less culpable than defendants who have no such excuse." *Penry v. Lynaugh*, 492 U.S. 302, 327-328, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

{¶28} Madison contends that an order compelling him to submit to a psychiatric examination forces him to choose between his Fifth Amendment privilege against self-incrimination and his Eighth Amendment right to present evidence in mitigation of the death penalty. Furthermore, Madison contends that the United States Supreme Court has "consistently rejected the notion that exercise of one constitutional right may be conditioned on the substantial impairment of another." In support of this argument, Madison relies on *Simmons v. United States*, 390 U.S. 377, 88 S.Ct 967, L.Ed.2d 1247 (1968). In *Simmons*, the Supreme Court held that "when a defendant testifies in support of a motion to suppress evidence pursuant to the Fourth Amendment, his testimony cannot be admitted against him at trial on the issue of guilt unless he makes no objection." *Id.* at 394. In *Simmons*, the defendant was not present when his suitcase was seized from another person's home. The only way to establish standing to object to the admission of the suitcase was for the defendant to testify that he was its owner. The defendant's suitcase, which was seized within a few hours of a bank robbery, was found

to contain money wrappers taken from the victimized bank and was therefore incriminating. The court recognized that Simmons was faced with the dilemma of choosing between his Fourth Amendment exclusionary claim and his Fifth Amendment privilege against self-incrimination.

{¶29} However, the court in *Simmons* held that the surrender of one right in order to assert another was intolerable "under the circumstances of th[at] case." *Id.* It did not hold, as Madison suggests, that a defendant may never be forced to surrender one right in order to assert another in any kind of criminal prosecution.

{¶30} Madison argues that "[h]e must submit to an unjustifiable infringement on his Fifth Amendment right to remain silent so that he may exercise his Eighth Amendment right to present mitigating evidence at a potential penalty phase." Further, Madison contends that the compelled psychiatric evaluation will result in "an unrestricted intrusion on his Fifth Amendment privilege against self-incrimination."

{¶31} Having reviewed the record, we do not see anything in the trial court's order — limiting the psychiatric evaluation to the issue of brain damage, and disallowing any questioning regarding the facts or circumstances of the case — that jeopardizes Madison's Fifth Amendment right against self-incrimination. By the defense's own admission, Madison's mental state is going to be an issue in the penalty phase of the proceedings. The trial court's order is narrowly tailored and adequately protects Madison's Fifth Amendment right against self-incrimination — in both the trial on the merits and the potential penalty phase — from an unreasonable infringement by the state.

**{¶32}** The alternative, that defense counsel has not argued here, is having the state examine Madison after he is found guilty and before the matter proceeds to the penalty phase. This would require putting the trial on hold for an undetermined number of months while Dr. Pitt evaluates Madison and prepares his report. Therefore, this solution is neither realistic nor constitutionally required.

**{¶33}** The second and final assignment of error is overruled.

**{¶34}** Finding no error based on the arguments advanced, this cause is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE

EILEEN T. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR