# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1956
_____

TANSHANNY T. WRIGHT,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
James C. Hankinson, Judge.

August 16, 2019

LEWIS, J.

Appellant, Tanshanny T. Wright, appeals his convictions for burglary of a structure with person assaulted (Count 1), criminal mischief (Count 2), and aggravated assault with a deadly weapon (Count 3). He argues that the trial court abused its discretion by instructing the jury to disregard his testimony. We disagree and affirm.

## BACKGROUND

At Appellant's jury trial, the victim testified that he was working at Zaxby's as part of his manager training when he noticed Appellant leaning over the registers and yelling at Ms. Godwin, one of the employees. Appellant then walked through the employee door that blocked the public's entry and walked down the

cashier aisle. The victim asked Appellant to leave because he was not supposed to be behind the counter. Appellant initially ignored the victim, but then started threatening him, saying, "I've killed people before like you." Appellant pulled out a pocketknife and threw it at the victim while still yelling and looking directly at him. The victim was scared and ducked to avoid being hit with the knife, which landed a couple of feet from him. Appellant then went to the drive-through window, where he continued to try to attack the victim and smashed the window. The incident was captured by the restaurant's surveillance cameras, without sound, and the video recording of it was admitted into evidence.

Appellant testified on direct examination that he went to Zaxby's to get some keys from Godwin, his child's mother. When he asked Godwin for the keys at the register, she told him to go behind the counter to get them from her. Appellant entered the back area in order to get the keys, but once there, he had an altercation with the victim. Appellant pulled a pocketknife because he was in a rush to see his child and was very frustrated, and the victim "kind of like put his hands on" him and "there was another employee coming behind [him]." Appellant had no intention of hurting anyone with the knife and threw it "to the wall," not at anybody, "just out of frustration" because he was "really agitated trying to get the keys." Upon leaving the restaurant, Appellant went to the drive-through where Godwin worked to get the keys, but the victim slammed the window in his face, and he, in turn, hit the glass "out of frustration." Appellant had two prior felony convictions.

On cross-examination, Appellant testified that Godwin told him to go behind the counter to get the keys and tried to give them to him, but the victim did not know that and intervened. Appellant denied threatening the victim and insisted that he threw the knife at the wall. The trial court instructed Appellant four times to stop interrupting and posing questions to the prosecutor, but he continued to do so, at which point the court told him to be quiet. In turn, Appellant repeatedly stated that it was his life on the line, ignoring the court's continued instruction that he be quiet. Appellant stated that "[t]his isn't a burglary," and when the court warned him that he would be removed from the stand, he again commented that it was his life on the line. At that point, the court

2

told Appellant to be quiet, instructed the jury to disregard his comments, and explained that every witness has to be subject to cross-examination and the State was entitled to answers to its questions. The court also warned Appellant that if he could not properly answer questions, it would instruct the jury to disregard his testimony. Appellant indicated that he would answer the questions, but before long, he started to make comments when there were not any questions pending, including that "y'all are playing with my life. My life is no joke," "[t]hat's not burglary," and "I didn't throw that knife at nobody," over the court's repeated instruction that he stop it. Appellant even stated that he was "done talking" and wished to "sit back down."

After asking the jury to step out of the courtroom, the trial court explained to Appellant that he was subject to reasonable questions from the State and had to answer those questions. The court twice more warned Appellant that it was going to tell the jury to disregard his testimony in its entirety if he was not going to answer the State's questions, and he responded that he understood and would answer the questions. Defense counsel did not want to be heard and declined an opportunity to talk with Appellant. When the jury returned, cross-examination resumed as follows:

> [STATE]: Now --
> [APPELLANT]: I told him I'm coming back there to get --
> [COURT]: Mr. Wright, there is not a question. She'll ask you a question. Ms. Surace [prosecutor], play what it is you want to play and then go back to the podium and ask your question.
> [STATE]: Okay.
> (Video played in open court.)
> [APPELLANT]: See, I threw it at the wall.
> [COURT]: Mr. Wright, be quiet. There is not a question being asked.
> [APPELLANT]: Y'all, this is my life.
> [COURT]: Be quiet.
> [APPELLANT]: Judge Hankinson - -
> [COURT]: I don't care what - -
> [APPELLANT]: -- this is my life.

3

[COURT]: -- there is not a question.

[APPELLANT]: Everybody in the jury know[s] this is not no [sic] burglary.

[COURT]: All right. You step down.

[APPELLANT]: This is not no burglary.

The trial court explained that because Appellant was refusing to properly answer questions on cross-examination, it was directing the jurors to disregard his testimony and "consider [they] did not hear anything he said."

At sidebar, the trial court explained that it had warned Appellant three times, "we can't even get him to wait for a question to be asked before he starts making additional comment," and it did not "know of any other remedy when someone won't subject themselves to cross-examination." When the court invited defense counsel to suggest "some other remedy," counsel stated, "I think when the witness is nonresponsive - - and I'm the first to admit, Mr. Wright is difficult, . . . you instruct the jury to disregard the nonresponsive answer, but I don't think you can erase the normal answers he gave previous to that." The court replied that if a witness for the State refuses to be cross-examined, the remedy is to strike the testimony and further explained:

> That's essentially what we have is he's refusing to answer cross-examination questions in an appropriate fashion. He wants to say whatever it is he said - - he's repeated it at least three times over the court trying to get him to be quiet - - that this is his life and it was not a burglary. I mean, those are statements that are totally inappropriate. And I've done my best to try to control the situation without - - I don't know what other remedy I have.

Defense counsel disagreed with the court's characterization, asserting that Appellant was not refusing to be cross-examined; instead, he was merely "showing inappropriate courtroom etiquette." Defense counsel suggested that the jury be asked to leave the courtroom and he be given a few minutes to try to calm Appellant down, but the court noted, "that's what I did last time. That's why I offered to let you talk to him last time." The court

4

overruled the defense's objection, explaining that "[Appellant is] going to comment what he chooses to comment, whether there's a question before the jury or not. The State's not having an opportunity to cross-examine him because he's refusing to respond to their questions. I don't know of any other remedy."

The defense rested without presenting further evidence, and the jury returned a verdict finding Appellant guilty as charged. Appellant moved for a mistrial or, in the alternative, a new trial based on the striking of his testimony. The trial court denied the motion, finding in part as follows:

> The record may not accurately reflect, but the defendant repeatedly continued to talk while the prosecutor and the Court were trying to talk. The defendant repeatedly asked questions of the prosecutor and made self-serving statements unrelated to any question.
>
> The jury was excused at one point for the Court to admonish the defendant. In this proceeding, the defendant agreed to properly respond to questions. However, once the jury was brought back in, the defendant began making further self-serving statements before a question could even be asked. The State had a right to cross examine the defendant. The defendant effectively refused to be cross examined. . . . The Court employed the only remedy it felt was available at the time.

Appellant was adjudicated guilty and sentenced to life imprisonment as a prison releasee reoffender ("PRR") on Count 1, eleven months and twenty-nine days of jail on Count 2, and five years of imprisonment as a PRR on Count 3, with the sentences to run concurrently. This appeal followed.

## ANALYSIS

A trial court's decision to restrict the presentation of evidence is reviewed for an abuse of discretion. *McCray v. State*, 71 So. 3d 848, 873 (Fla. 2011). A criminal defendant has a fundamental right to present evidence and to testify on his or her own behalf. *Id.* at 872. That right, however, is not absolute and "may, in

appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 872-73 (quoting *Bowden v. State*, 588 So. 2d 225, 230 (Fla. 1991)). "One area in which the right to testify may be circumscribed is where a defendant chooses to disregard the rules of evidence." *Id.* at 873 (quoting *Booker v. State*, 397 So. 2d 910, 914 (Fla. 1981), that "[a] defendant who takes the stand as a witness in his own behalf occupies the same status as any other witness, and all the rules applicable to other witnesses are likewise applicable to him"). "Nevertheless, a procedural or evidentiary rule may not be applied in a manner so as to arbitrarily exclude material portions of a defendant's testimony." *Id.* The Court further explained:

> A criminal defendant's right to testify overlaps with the trial court's discretionary role in ruling on the admissibility of evidence. The trial court's authority to impose restrictions on the presentation of evidence is recognized by Florida statute, which permits a trial court to "exercise reasonable control over the mode and order of the interrogation of witnesses and the presentation [of evidence]" in order to "[f]acilitate, through effective interrogation and presentation, the discovery of the truth" and "[a]void needless consumption of time." § 90.612(1)(a)-(b), Fla. Stat. (2008). Further, a trial court has discretion to limit the presentation of evidence that is either irrelevant or outside the scope of a witness's knowledge. *See* §§ 90.403, 90.604, Fla. Stat. (2008). However, the court's discretion on evidentiary matters such as these must be constrained by a criminal defendant's constitutional right to testify.

*Id.* (holding that the trial court did not abuse its discretion by terminating the defendant's narrative testimony on direct examination after at least fifty minutes where "a large portion" of the testimony "was completely irrelevant, outside the scope of his knowledge, or constituted impermissible argument").

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested"; "the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-

6

examiner has traditionally been allowed to impeach, i.e., discredit, the witness." *McDuffie v. State*, 970 So. 2d 312, 324 (Fla. 2007) (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). "[C]ross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief . . . ." *Id.* at 325 (quoting *Boyd v. State*, 910 So. 2d 167, 185 (Fla. 2005)). "[W]hen a defendant chooses to testify in a criminal case, the Fifth Amendment does not allow him to refuse to answer related questions on cross-examination." *Kansas v. Cheever*, 571 U.S. 87, 94 (2013). "A defendant 'has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts.'" *Id.* (citation omitted).

"Striking all of the testimony of the witness may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process." *Sule v. State*, 968 So. 2d 99, 105-06 (Fla. 4th DCA 2007) (holding that the trial court did not err by excluding a defense witness's testimony because the witness sought to invoke his Fifth Amendment privilege on material issues that would have prevented full and fair cross-examination) (quoting *Lawson v. Murray*, 837 F.2d 653, 655-56 (4th Cir. 1988)); *see also Kelly v. State*, 425 So. 2d 81, 83-84 (Fla. 2d DCA 1982) (reversing the defendant's convictions because his right to cross-examination was thwarted where the State's star witness on direct examination testified that he had been arrested for soliciting a bribe but denied offering to change his testimony for money and on cross-examination invoked the Fifth Amendment and refused to answer questions about the details of his charge for soliciting a bribe); *Victorino v. State*, 127 So. 3d 478, 488-89 (Fla. 2013) (finding that defense counsel was deficient in failing to object and request the exclusion of the testimony of a State witness who gave direct testimony implicating the appellant, but refused to be cross-examined about whether he colluded to blame the appellant, and quoting *Kelly* that "if 'a defendant's right to cross-examination on such matters [as a witness's credibility] is thwarted, the remedy is to strike the witness' testimony.'"). *Cf. Gamez v. State*, 643 So. 2d 1105, 1106 (Fla. 4th DCA 1994) (finding that the trial court erred by excluding the testimony of the defense witness who, during proffer, provided

on direct examination testimony relevant to the appellant's defense and invoked the Fifth Amendment on cross-examination when the State asked questions directly related to his involvement in the crime, which went beyond the matters covered on direct examination).

In *Ellis v. State*, 550 So. 2d 110, 110 (Fla. 2d DCA 1989), the Second District upheld the striking of the defendant's testimony where he took the stand to deny committing the crimes and then invoked the Fifth Amendment and, despite warning of the consequence, refused to answer questions on cross-examination. "When Ellis took the stand and denied guilt, he was subject to proper cross examination by the state. When Ellis refused to testify, the trial court had the authority to advise the jury to disregard Ellis's testimony." *Id.; see also Harris v. State*, 236 So. 2d 135, 136 (Fla. 1st DCA 1970) (finding that the trial court did not err by striking the defendant's testimony as irrelevant where he testified on direct examination about matters unrelated to the crime and his counsel objected on cross-examination to the State's question about how he procured the murder weapon on the ground that it was outside the scope of direct examination).

Federal courts have likewise held that it is proper to strike the entire testimony of a witness, including the defendant, when the witness refuses to answer questions on cross-examination. *See, e.g.*, *Williams v. Borg*, 139 F.3d 737, 740-42 (9th Cir. 1998) (upholding the striking of the defendant's testimony where he refused to be cross-examined about his prior convictions despite warnings and finding that the penalty was not arbitrary because "'[a]rbitrary' in this context means without a basis in reason or law. Here, there was a sensible reason for striking the testimony. A witness, including a defendant testifying for himself, is supposed to swear to tell the truth, and then tell it, on cross as well as direct. A defendant is not allowed to tell the jury his story without subjecting himself to the risk of perjury prosecution if he lies, and answering questions designed to expose him as a liar" and it was not disproportionate because "[t]he purpose of the judge's sanction was to make [him] answer the questions about his prior felonies, so that the jury could use the answers to evaluate his credibility. The sanction was a measured means to serve an important purpose"); *United States v. Bartelho*, 129 F.3d 663, 673-74 (1st Cir.

8

1997) (finding that it was not error to strike the defendant's testimony where he testified on direct examination that he supported himself through drug sales, but on cross-examination refused to answer the government's question about the identity of his drug supplier because the question "was not collateral, but instead directly targeted the credibility of the absence-of-motive defense [to the robbery charge] he interposed," even though the sanction "may have been broader than necessary"); *United States v. Montgomery*, 998 F.2d 1468, 1479-80 (9th Cir. 1993) (holding that the district court did not err by striking the defendant's testimony when he refused to answer the government's questions about his source because the identity of his suppliers was reasonably related to his entrapment defense and, thus, was not a collateral matter, and noting that the court had defined "collateral matter" as a "matter not reasonably related to or directly affecting a witness's testimony").

Here, Appellant acknowledges that the trial court may strike the testimony of a defendant who refuses to answer questions on cross-examination, but maintains that he did not refuse to answer the State's questions. In pointing out that he answered numerous questions posed by the prosecutor, Appellant ignores that as his inappropriate behavior on the stand escalated, the prosecutor was unable to continue her questioning. Appellant effectively refused to answer the State's questions because his behavior precluded the State from proceeding with its cross-examination and posing further questions. Appellant prevented the State from fully testing his credibility and the truth of his testimony on direct examination, thereby frustrating the purpose of cross-examination. It is clear from the record that the State was not done with its cross-examination, which directly related to Appellant's testimony about the incident on direct examination.

The sanction of striking Appellant's testimony was elicited solely by his own misconduct, which he had ample opportunity to correct. The trial court started with lesser sanctions, such as directing Appellant to stop the inappropriate conduct and instructing the jury to disregard his improper comments. Additionally, the trial court warned Appellant three times of the consequence of striking his entire testimony if his misconduct persisted. As soon as cross-examination resumed after the third

such warning, Appellant interrupted the prosecutor and started making unsolicited, self-serving comments. The State did not get a chance to ask a single additional question. Despite the trial court's efforts to re-gain control over the proceedings, Appellant repeated that it was his life and that the offense he committed was not burglary and the jury knew that. It was only then that the trial court asked Appellant to step down and instructed the jury to disregard his entire testimony. Given such, we find that the trial court's decision to strike Appellant's testimony was neither arbitrary nor disproportionate and was well within its discretion.

Furthermore, contrary to Appellant's contention that the trial court's sanction was extreme, the striking of testimony need not be a last resort. In any event, Appellant does not explain what alternative lesser sanction would have been effective. This case does not present a situation where Appellant refused to answer a single question or inquiry into a particular matter regarding which his testimony on direct examination could have been excluded. When the trial court explained that it did not know of any other remedy, defense counsel suggested the court instruct the jury to disregard the nonresponsive answer; later on, counsel suggested he should talk to Appellant to try to calm him down. However, the trial court had already instructed the jury to disregard Appellant's improper comments and offered defense counsel an opportunity to speak with Appellant, which counsel declined. The court had also repeatedly warned Appellant that his testimony would be stricken if his misconduct persisted. Nothing the trial court tried worked. Instructing the jury—once again—to disregard the improper comments would not have served the purpose of making Appellant answer the questions and allowing the State to exercise its right to fully cross-examine him.

Therefore, the trial court did not abuse its discretion by striking Appellant's testimony, and we affirm his convictions and sentences.

AFFIRMED.

MAKAR and BILBREY, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Candice Kaye Brower, Criminal Conflict and Civil Regional Counsel, and Melissa Joy Ford, Assistant Regional Conflict Counsel, Tallahassee, for Appellant.

Ashley Moody, Attorney General, and Amanda D. Stokes, Assistant Attorney General, Tallahassee, for Appellee.